## D. W. NASON v. DIRECTORS OF THE POOR.

ERROR TO THE COURT OF COMMON PLEAS OF ERIE COUNTY.

|126    445|
|149    356|

126        445
25 SC ⁵ 45

Argued May 3, 1889—Decided May 13, 1889.
[To be reported.]

1. The act of April 22, 1879, P. L. 30, making it the duty of the county auditors to audit the accounts of the directors of the poor, " and of the treasurer and steward of each and every poor house," etc., authorizes the auditing of the accounts of the treasurer of the directors of the poor of the county.
2. Said act is not unconstitutional, either because it does not clearly express in its title the subject matter so far as the accounts of such treasurer are concerned, or because it is a local or special act; and whether the supplemental act of June 2, 1881, P. L. 44, is unconstitutional or not, is immaterial.
3. The treasurer of the directors of the poor who has given bond for the safe keeping of public moneys which come into his hands, is not relieved from liability therefor on account of the failure of the bank in which such moneys were deposited by him: Baily v. Commonwealth, 20 W. N. 221; s. c. 9 Cent. R. 223.
4. Nor may the treasurer be relieved from such liability by the informal action of two members of the board of directors, agreed upon by them at a meeting called for the purpose but without notice to the third member, and when no motions were put or declared adopted.
5. The directors of the poor can perform no official act and can bind the county by no contract they may make, except when acting as a board, and they can act as a board only when lawfully convened as such: Erie City Sch. Dist. v. Fuess, 98 Pa. 600.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 411 January Term 1889, Sup. Ct.; court below, No. 143 May Term 1887, and No. 29 September Term 1887, C. P.

On April 14, 1887, D. W. Nason filed an appeal from the report of the auditors of Erie county, auditing his account as treasurer of the directors of the poor of said county. On May 9th, the court directed an issue "to try the facts as to whether the report of said auditors is correct in refusing to said appellant the credit claimed by him for the said sum of $1,582.69; the directors of the poor of the county of Erie to be plaintiff,

Statement of Facts.

and the report of said auditors to stand as a declaration in this case, and the plea of said appellant, who shall be the defendant, to be payment with leave," etc.

On October 10, 1887, it was agreed by the parties that the cause be submitted to the decision of the court, without a jury, under the act of April 22, 1874, P. L. 109.

At the trial which followed, the plaintiffs put in evidence the report of the county auditors for the year 1886, showing the balance due from the defendant, and rested. In the defendant's case, D. W. Nason, the defendant, was called in his own behalf and testified that he was treasurer and secretary of the board of directors of the poor up to April 1, 1886; that Mr. Henderson, the president, called a special meeting of the board along the last of March, 1886; that Mr. McAllister and Mr. Willis were notified by mail; there were notices written and put into the post-office; that Mr. Willis and Mr. Henderson, with Mr. A. J. Foster, the solicitor, attended; and that no minutes were made of the meeting or of the business transacted. The witness proceeded: "I wanted to settle, which was the reason of the calling of the meeting. I wanted to know what they wanted to do about the Humboldt Bank matter. McAllister did not come. Willis said he had investigated and had the solicitor investigate, and as nearly as he could learn they could not hold me for it. He moved that I make an assignment of the bank-book to them. It was in my name as treasurer. He and Henderson both agreed to it. The solicitor drew the assignment in the bank book. I signed it. That is the book, this is the assignment. Mr. Willis said to Henderson that, after the auditor's report and I had paid balance to my successor, he was to give up my bond. I brought receipt from Town, my successor, and handed it to Henderson. He gave me the bond in presence of Foster, solicitor." Offer:

Defendant offers to prove by this and other witnesses that the bank was reported solvent and safe at the time this money was deposited and up to the time of failure; and that it had a large number of depositors, among whom were some of the most prudent and conservative business men in the city of Erie; and was considered solvent by the defendant and the community.

Objected to.

By the court: Question rejected and objection sustained; exception.[1]

A. J. Foster, testified that he was present at the special meeting, March 31, 1886; the purpose of the meeting was to settle with Nason, so auditors could meet and audit his accounts; the question as to the liability of Nason on his bond arose; witness did not think there were any formal motions, Mr. Willis and Mr. Henderson simply talked the matter over:

Q. What was said by Willis and Henderson at this meeting, as to the settlement of the account of Mr. Nason, and what was done in pursuance thereof, in presence of Mr. Nason?

Objected to as incompetent.

By the court: Objection sustained; exception.[2]

The cause having been closed on the testimony, the court, GUNNISON, P. J., filed the following decision:

The plaintiffs submit that under the evidence and the law, and upon the whole case, the judgment should be for the plaintiffs for the amount of the reported deficiency and interest.

Answer: This point is affirmed.[3]

The court is requested by the defendants to find as the law applicable to and governing the decision of this case as follows, to wit:

1. That the act of assembly of this commonwealth, entitled "An act extending the power and authority of county auditors, authorizing them to settle, audit and adjust the accounts of the directors of the poor of the several counties of this commonwealth," approved April 22, 1879, and the amendment thereto, approved June 2, 1881, does not give said auditors power to settle, audit and adjust the accounts of the defendant as treasurer, he not being the treasurer of the poor house, but of the corporation styled "The Directors of the Poor and of the House of Employment of the County of Erie."

Answer: Refused.[4]

2. If the court shall be of opinion that the phraseology of said acts does include the defendant as treasurer of the directors of the poor, then he is asked to decide that said acts are unconstitutional so far as relates to such officer, because it is not set out in the title of said respective acts, that said county

auditors shall have power to audit or settle the accounts of any other officers than those of " directors of the poor," and therefore violates' § 3, article III. of the constitution of this commonwealth.

Answer : Refused.[5]

3. That the poor directors of Erie county have full power under the acts creating said corporation to settle and adjust the accounts of their treasurer with them, and that it is their duty to do so ; and that they, therefore, have full power and authority to discharge and acquit him of all liability to said corporation, and that such settlement, acquittal and discharge, is binding upon said corporation, if its terms have been complied with by such treasurer.

Answer : Refused.[6]

4. That even if the meeting of March 31, 1886, was not legally called, for want of proper notice, or for want of notice to any one of the directors, the two directors present, who constituted a majority of the said board, having made a settlement with said defendant as treasurer, the conditions of which have been complied with by said treasurer, and accepted by said directors, and the conditions and terms of said settlement having been made known to the full board at its next regular meeting in April, without dissent by any of them, said settlement is binding on said corporation, and it is now estopped to claim said sum of $1,582.09 from the said defendant, or that he was not released from all further liability to it by said contract of settlement.

Answer : Refused.[7]

This is an issue, formed upon the appeal of the defendant from the report of the county auditors, reporting a balance in his hands as treasurer of the directors of the poor of $1,582.69. The facts, as they appeared from the admissions of counsel, and evidence produced at the trial, are substantially as follows :

1. The plaintiffs are a corporation, invested with the care and maintenance of the poor of Erie county, and for that purpose have power to call upon the commissioners of Erie county for such amount of money, from year to year, as they may deem necessary.

2. The defendant was by said directors duly appointed treasurer of said corporation, January 12, 1885, for the term

of one year; qualified, gave a bond in the regular form, and continued to act under this appointment until January 6, 1886, when he was appointed to hold the office temporarily, or until April 1, 1886, but gave no new bond upon such reappointment. In his capacity of treasurer, he paid all warrants drawn by order of the board, including those for the expenses at the poor house, but no warrants were paid by him upon the order of the steward of the poor house, who had no authority to draw warrants upon the funds in his hands. His successor entered upon the duties of his office April 1, 1886.

3. The defendant, as treasurer aforesaid, received from the treasurer of the county of Erie, on January 12, 1885, a check on the Humboldt Safe Deposit and Trust Co., of Erie, Pa., for the sum of seven thousand dollars, payable out of the funds of the county then on deposit in said bank. He deposited the check in the same bank, and it was credited to him in the deposit book issued to him as treasurer by the said bank, and was drawn upon by the defendant as treasurer aforesaid, to pay the warrants made and issued by said directors of the poor.

4. The Humboldt Safe Deposit and Trust Co. became insolvent and suspended payment February 1, 1885, and on April 4, 1885, made an assignment of all its assets to J. C. Hilton, Esq., for the benefit of creditors. Upon the day upon which the bank suspended payment, there was a balance to the credit of the account of D. W. Nason, treasurer, of $1,758.54, which was reduced by a dividend made by the officers of the bank, before the assignment to Hilton, to $1,582.69.

5. The county auditors who audited the defendant's account for the year 1885, reported February 9, 1886, a balance in the treasury of $19,806.63, " which includes $1,582.69 deposited in Humboldt Bank." This report was not appealed from.

6. In March, 1886, Joseph Henderson, president of the board of directors of the poor, etc., directed the defendant, as secretary of the board, to call a special meeting of the directors, for the purpose of settling with the defendant, to be held March 31, 1886, at the office of the board, in the city of Erie, the regular place for meeting being the poor house in Millcreek township. Notices of the meeting were accordingly written by the defendant, and placed in a letter box in the city of Erie, post-paid, directed to the two directors, Franklin Willis and O.

C. McAllister, the third member of the board being Mr. Henderson, the president, by whose direction the meeting was called. Franklin Willis received the notice addressed to him. Mr. McAllister never received the notice sent him.

7. On March 31, two of the directors, to-wit: Joseph Henderson and Franklin Willis, met at the office in the city of Erie, Mr. McAllister not being present, and agreed to a settlement with the defendants as follows: Upon the defendant assigning to the directors of the poor the deposit book issued by the Humboldt Safe Deposit and Trust Co., with his rights thereunder, and transferring and delivering to his successor all books and papers pertaining to the office, and paying to his successor all money in his hands as treasurer, he should be released from all liability for the amount in the bank, and his bond should be surrendered and canceled. No minutes of this meeting were kept by the secretary. The proceedings were passed by the testimony of those present. The proceedings were informal. No motions were put or declared adopted. The defendant performed the part of the agreement so made to be performed by him, and received his bond from the president of the board.

8. There was no subsequent formal or official ratification by the board of the action had at the special meeting of March 31, 1886. Mr. McAllister, the member who was not present at that meeting, was informed at the next regular meeting of what had been done by his colleagues at the special meeting. The plaintiffs have, however, received $237.40, upon the claim, from the assignee of the bank, upon a partial distribution of the assets collected by him.

9. The county auditors, who audited the defendant's account from January 1, 1886, to April 1, 1886, reported a balance due from him of $1,354.79. It was admitted, however, that the amount reported by them was erroneous, the real balance of the deposit in the bank, after deducting the amount received upon the partial distribution, being $1,345.29. From this report the defendant appealed, upon which this issue was formed.

On the part of the plaintiffs it is contended that the defendant was bound to account for and pay over all moneys received by him in his official capacity; that the failure of the bank was no defence to the payment of the balance standing to the

credit of his account as treasurer; that there never was a
settlement between him and the board of directors, whatever
was done having been done by the two individual members
present at the time, not at a legal meeting of the board; and
that even if such a settlement had been made by the board at
a regular meeting, it would have been ultra vires, and that it
could not be subsequently ratified.

The defendant claims that the settlement made between him
and the two directors, was upon good consideration, and was
within the scope of the authority of the board of directors;
that the knowledge of that settlement acquired by the third
director soon after it was made, he not objecting thereto,
amounted to a ratification by the board; and that having ac-
cepted the distribution made by the assignee of the bank upon
the claim assigned to them by the defendant, they are now es-
topped from denying the validity of the settlement.   He fur-
ther contends that there is no authority for the auditing and set-
tlement of his accounts by the county auditors; that the acts
of April 22, 1879, P. L. 30, and June 2, 1881, P. L. 44, making
it the duty of the county auditors to audit the accounts of
" directors of the poor and of the treasurer and steward of any
poor house within any county wherever a poor house has been,
or may hereafter be erected," do not authorize them to audit
the accounts of the treasurer of the directors of the poor;
also that each act is unconstitutional so far as the accounts of
treasurer are concerned. because it does not clearly express in its
title the subject matter; and the act of 1881 is unconstitu-
tional because it is special legislation.

The first question arising in the determination of the case is
one of jurisdiction, and involves the constitutionality of the
acts of 1879 and 1881.  If the county auditors had no authority
to audit the defendant's account, their audit was not binding
on him and his appeal should be sustained.   Whether or not
the act of 1881 is special legislation need not be considered.
Its purpose was to limit the operation of the act of 1879 to the
cases specified.   The act of 1879 is not objectionable as special
legislation certainly.

I can see no force in the distinction made by the counsel
for the defendant that he is not " treasurer of the poor house,"
and that therefore the act does not contemplate him as one of

the officers whose accounts are to be audited by the county auditors. I have not been referred to, nor have I been able to find any act of assembly creating the office of "treasurer of the poor house." The defendant was treasurer of the directors of the poor, and as such it was his duty to pay all warrants drawn by the directors for all expenses at the poor house. There was no other person authorized to pay those warrants. I am therefore of the opinion that he was "treasurer of the poor house" within the meaning of the act of assembly.

Does the act offend against the constitution so far as this office is concerned, in that it does not indicate its subject sufficiently in its title? It is entitled "An act extending the powers and authority of county auditors, authorizing them to settle, audit and adjust the accounts of the directors of the poor of the several counties of the commonwealth." It enacts, "That in addition to the powers and duties of county auditors, as now conferred on them by law, it shall be their duty to audit and adjust the accounts of the directors of the poor, and of the treasurer and steward of each and every poor house," etc. If the title were simply "An act extending the power and authority of county auditors," omitting the clause which follows, there would be no doubt as to its constitutionality. It must be borne in mind that "all the presumptions are in favor of the constitutionality of an act of assembly; to doubt is to decide in favor of its constitutionality:" Craig v. First P. Church, 88 Pa. 42. "It is sufficient if the title fairly gives notice of the subject matter of the act, so as reasonably to lead to an inquiry into its body:" Esling's App., 89 Pa. 205; Allegheny County Home's Case, 77 Pa. 80. The provision authorizing the settlement and auditing of the accounts of the treasurer of the poor house is germane to the subject matter as expressed in the title. The accounts of the treasurer of the poor house are the accounts between him and the directors of the poor. They are the accounts of the directors themselves. I am therefore of opinion that the act is constitutional.

Since the decision in Baily v. The Commonwealth, 9 Cent. R. 223, it cannot be doubted that the law is in this state, that in an action against a receiver of public moneys, it is no defence that the money was deposited in good faith, in a bank which afterwards became insolvent, by which insolvency the

money was lost. The defendant is therefore liable for the balance claimed, unless he has been discharged by the settlement, which he alleges was made by the directors of the poor with him. Does the testimony show that such a settlement was, made?

That an attempt was made to make it by two members of the board is true. But it was not at a regular meeting; the third member was not present, nor did he have due and legal notice of the meeting. It is well settled that notice of a special meeting of a corporation must be given to each person entitled to be present; and further, that when there is no method of giving notice prescribed by law, or by the by-laws or regulations of the corporation, personal notice is required: 1 Potter on Corporations, §§ 336, 337, 342; Pike Co. v. Rowland, 94 Pa. 238. No notice whatever was received by Mr. McAllister, and that defect not being cured by his presence without notice, the settlement made or attempted to be made by the members, can have no binding effect. Nor was there such subsequent ratification by the board as would be binding. No minutes of the special meeting were recorded, none were afterwards read or adopted. The fact that Mr. McAllister was afterwards told of the action of his fellow-directors, he not protesting, would not amount to ratification. Nothing but an official ratification at a legal meeting would avail to bind the board.

The defendant, however, urges that the plaintiffs having received a dividend from the assignee of the bank, upon the account transferred to them by him, are estopped from questioning the validity of the agreement by which he was to be released, even if the agreement were not made, or ratified by the board at a legal meeting. The facts show that there was one essential element lacking to constitute an estoppel. In order to successfully set up an estoppel, it must appear that the party setting it up was induced by the acts or representations of the other party to act to his injury. The defendant has not shown that he sustained any injury. Moreover, the claim he assigned to them was for money deposited by him as treasurer, which was the very money he was bound in law to turn over or pay to the board, or to his successor in office, and not his own money. Had he assigned to them his private and individual bank account, it is possible a different question might

have been presented. But when they received the dividend, they but received their own. It amounted to no more than his paying to them so much on account of his indebtedness to them, which but reduced the amount of the indebtedness. If I am correct in this conclusion, it must follow, not only that there was no ratification of the contract, but no estoppel by the acts of the plaintiffs, and no consideration for the contract if it was within the power of the directors to make, even if made regularly and legally.

The appeal of the defendant is therefore dismissed at the cost of the defendant appellant, and the prothonotary is directed to give notice of this decision to the parties or their attorneys, and at the expiration of thirty days after such notice, to enter judgment against the defendant and in favor of the plaintiffs for costs, unless exceptions are filed in the meantime.

Various exceptions filed by the defendant to the decision of the court were dismissed, and judgment entered accordingly, whereupon the defendant took this writ assigning as error:

1, 2. The refusal of defendant's offers.[1] [2]

3. The affirmance of plaintiff's point.[3]

4–7. The refusal of defendant's points.[4 to 7]

8. The dismissal of defendant's appeal.

*Mr. John P. Vincent* (with him *Mr. E. A. Walling*), for the plaintiff in error:

1. Section 1, act of April 22, 1879, P. L. 30, provides that it shall be the duty of the auditors " to audit, settle and adjust the accounts of the directors of the poor and the treasurer and steward of each and every poor house within any county wherein any poor house is now or may hereafter be erected." The title to the act specifies only the accounts of the directors of the poor which are to be audited, adjusted, etc., by the county auditors. Moreover, the report of the State Board of Charities for the year 1886, p. 151, shows that there were then eighteen counties in the state in which an almshouse had not been erected. The act was therefore not applicable to the whole state, and was but a local act prohibited by §§ 3 and 7, article III. of the constitution: Davis v. Clark, 106 Pa. 377;

Scowden's App., 96 Pa. 422.  The supplement of June 2, 1881, P. L. 44, is a more flagrant violation of the constitution in the respects mentioned, than the act of 1879.  Neither of these acts, therefore, conferred any power upon the county auditors to audit the account of the treasurer of the directors of the poor.

2. The act of June 24, 1839, P. L. 423, incorporating the directors of the poor of Erie county, in its § 6 provides "that any two of the directors shall be a quorum in all cases to do business."  Section 3 gives them power to appoint a treasurer annually, who must account for all moneys, etc., belonging to said "corporation."  By the same section the directors are made a body, politic and corporate in law.  We submit that not only was it in the power of the directors to settle with their treasurer, but it was also their duty, and that in so doing they had the right to take into consideration every equity that was in his favor, and that such settlement was founded on a valuable consideration, is binding upon the directors, and as completely estops them as if the settlement had been made between individuals : Randolph Co. v. Post, 3 Otto 502.

3. The directors received a consideration for their agreement to cancel the bond, in the assignment to them of the deposit book, for that assignment, under the rules of the bank, took away from him and gave to them the right to draw out the deposit; moreover, the plaintiffs admit that they have received over $200 out of that deposit.  The power of a corporation to sue and be sued, includes the power to refer, or to take any other step that an individual may take to reach a final judgment: Alexandria Canal Co. v. Swann, 5 How. 83 ; Chesapeake etc. Canal Co. v. Knapp, 9 Pet. 541.  A corporation is estopped from denying its contract, even though illegal, after having received the consideration and being still in the enjoyment of it: Pendleton Co. v. Amy, 13 Wall. 297 ; 2 Herman on Estoppel, §§ 1039, 1040 ; DeGraff v. Thread Co., 24 Barb. 375 ; Bissel v. Railroad Co., 22 N. Y. 259 ; Oil Creek etc. R. Co. v. Transportation Co., 83 Pa. 160.

4. The special meeting was a legal one.  Under the organic act two directors are a quorum to do any business.  Two directors were present at the meeting, a settlement was agreed upon, and the terms literally fulfilled by the defendant and

accepted by the directors, and this action was made known to McAllister at the next regular meeting of the full board and he did not dissent. "The maxim which makes ratification equivalent to a precedent authority, is as much predicable of ratification by a corporation as it is of ratification by any other principal, and it is equally to be presumed from the absence of dissent:" Gordon v. Preston, 1 W. 385; Kelsey v. National Bank, 69 Pa. 426. There was no question of bad faith on the part of the defendant, proved or asserted. There was a strong equity in his favor to have the directors treat the deposit as a payment and so receive it, and this is a sufficient consideration for an executed contract.

*Mr. W. A. Galbraith* (with him *Mr. E. P. Gould*), for the defendant in error:

1. The act of April 22, 1879, P. L. 30, was plainly intended as a supplement to the act of April 15, 1834, P. L. 26, and its title was entirely sufficient to give notice of the subject matter of the intended legislation; more than this is not required: Dorsey's App., 72 Pa. 192; Allegheny Co. Home's Case, 77 Pa. 77; State Line etc. R. Co.'s App., 77 Pa. 429; Esling's App., 89 Pa. 205; Craig v. First P. Church, 88 Pa. 42; In re Church St., 54 Pa. 353; Blood v. Mercelliott, 53 Pa. 391; Commonwealth v. Butler, 99 Pa. 535.

2. What was established by this court in Davis v. Clark, 106 Pa. 377, and that line of cases is, that when the operation of an act of assembly is limited by its terms to a portion of the state only, it is then local. No county is excluded from the operation of the act in question. Whenever poor houses are erected in the counties where none now are, such counties will come at once under its operation. It would hardly do to contend that a statute relating to state normal schools would be in violation of § 7, article III. of the constitution, on the strength of a report of the department of public schools, that there are only a few counties where normal schools are established.

3. The board has only such powers as are expressly given by the law under which they act, or necessarily implied from the very nature of their duties. They have no right to give away the money of the county, but only the right to expend

it for the purposes and within the limits prescribed. The surrender and assignment by the treasurer of the bank deposit book and the receipt of a dividend from the receiver of the insolvent bank, formed no consideration that could protect the defaulting officer from being required to account. It was not the money of Mr. Nason, but that of the board of poor directors, and the dividend could only avail him as a part payment, and a reduction to that extent of his liability. It is certainly carrying the doctrine of estoppel to an extravagant length to seek to apply it to this case.

4. It is true that by the incorporating act any two of the directors shall be a quorum to do business; but in case of a special meeting, previous notice is an indispensable prerequisite to the legality of such meeting: Pike Co. v. Rowland, 94 Pa. 238; Green's Brice's Ultra Vires, 344 and note. Furthermore, even if the notice had been regular, there was in fact no meeting of the board in any proper sense of the term. There was no motion made, nor any motion put to vote; no minutes of the proceedings were taken down, and no record of any meeting was made. There was thus no action of the board to ratify, and if there had been, it could not be ratified by the mere fact that when Mr. McAllister was afterwards informed of the action of Mr. Henderson and Mr. Willis, at the next regular meeting, when all were present, he made no objection. The directors can act only as a board: Erie City Sch. Dist. v. Fuess, 98 Pa. 600. The powers of the directors of the poor are limited to the purposes named in the act of assembly, and they have no right to do what it is claimed they did do, give away the money of the county by exonerating the treasurer and his bondsmen: Chester Co. v. Barber, 97 Pa. 455; Baily v. Commonwealth, 20 W. N. 221.

OPINION, MR. CHIEF JUSTICE PAXSON:

The defendant below was the treasurer of the directors of the poor for the county of Erie. The county auditors who audited his account reported a balance due from him of $1,354.79. It was admitted, however, that the correct balance should have been reported at $1,345.29. This balance was represented by a deposit made by the treasurer with the Humboldt Safe Deposit & Trust Company. The deficit was caused

by the failure of that institution. The defendant alleged a settlement with the directors of the poor. In consideration of his assigning to them his bank book with the said Humboldt Bank, and all rights thereunder, two of the three directors agreed to surrender up his bond and release him from all liability. The defendant gave no consideration for this settlement; the money in the defunct bank belonged to the county, and he merely gave up the evidence of the deposit. Had this alleged settlement been made by a regular or legal meeting of the directors, and in an orderly manner, we would have had the question before us of the power of the directors to make the settlement and give away what did not belong to them, viz., $1,345.29 of the money of the county of Erie. The meeting, however, was not a formal legal meeting of the board. There were but two members present and the third had received no notice of it. The learned judge finds: "No minutes of the meeting were kept by the secretary. The proceedings were passed by the testimony of those present. The proceedings were informal. No motions were put or declared adopted."

It hardly needs an argument to show that a public body, charged with important public duties, cannot transact their business in this loose way. If two of three directors of the poor could get together in a corner, without the presence of, or notice to, the other member, and bind the county by their informal, unofficial acts, it requires no prophetic vision to see that gross abuses would soon spring up and take root. It seems almost a waste of time to cite authority for so plain a proposition; I will refer only to School District of the City of Erie v. Fuess, 98 Pa. 600, where it was said by our late brother TRUNKEY, in speaking of a board of school directors: "The directors as a board must exercise their powers; the board may make contracts, may authorize a committee to make a contract, and may appoint an agent for a proper and specific purpose. One or more of the directors, without authority from the board, can make no contract binding upon the district, cannot change a contract, can do no act fixing the district for a liability. He may be personally responsible to those who suffer from his unauthorized acts, as any other citizen would be." The directors of the poor, no more than a board of school directors, can perform no official act, can bind the county by no contract,

Opinion of the Court.

except when acting as a board, and they can only act as a board when lawfully convened as such. It follows that the alleged settlement between the two members and the defendant was no settlement at all.

The failure of the bank in which the defendant deposited the money is no defence. A receiver of public moneys who has given bond for its safe keeping, is not discharged from liability therefor by the failure of his banker. This was expressly decided in the case of Baily v. The Commonwealth, not yet reported in our state reports.* It may be found in 9 Cent. R. 223, and 20 W. N. 221.

There is not much else in the case. We do not think there is any force in the argument that the acts of April 22, 1879, P. L. 30, and June 2, 1881, P. L. 44, making it the duty of the county auditors to audit the accounts of " directors of the poor, of the treasurer and steward of any poor house, within any county where a poor house has been or may hereafter be erected," do not authorize them to audit the accounts of the treasurer of the directors of the poor; also that each act is unconstitutional so far as the accounts of treasurer are concerned, because it does not clearly express in its title the subject matter; and that the act of 1881 is unconstitutional because it is special legislation. We need not concern ourselves about the act of 1881, for if that offends against the organic law because it is special legislation, it leaves the act of 1879 in force, and we think the purpose of that act is sufficiently expressed in the title. The criticism that the defendant is not the treasurer of the poor house, but of the directors of the poor is exceedingly refined and does not require discussion.

Judgment affirmed.

---

* Baily v. Commonwealth was not ordered to be reported, and it was decided before the act of March 28, 1889, P. L. 22.