Kinkade, J.
 

 The National Surety Company brought an action against Dennis W. Seward, formerly postmaster at Elyria, Ohio, to recover an amount that the surety company had to pay to the United States Government to cover a shortage, in round figures $1260, in the accounts of Seward as postmaster. Seward claimed that neither the petition, nor the petition as supplemented by the statements of counsel for the surety company, was sufficient to state a cause of action, and moved the court to direct a verdict in favor of Seward. The trial court granted this motion, and judgment was entered accordingly. The surety company prosecuted error to the Court of Appeals, which court reversed the judgment of the court of common pleas. Seward prosecutes error in this court, seeking a reversal of the judgment of the Court of Appeals.
 

 There is no dispute in the case about the main facts. Seward was postmaster, and the surety company was a surety upon the bond that he was required to give to the government as postmaster.
 
 *49
 
 All of his duties as postmaster were discharged according to law, with the exception of this shortage of $1260, which he declined to pay to the post office department, on the ground that it was not lost through any negligence or malfeasance in office on the part of Seward, hut that it had been stolen by a party connected with the post office management. Seward claimed that he could only be held liable in the event that he had been guilty of negligence which contributed to the loss of the money, and contended furthermore that he had notified the surety company not to pay the amount to the government, and that he would not reimburse the surety company if it did so pay the money to the government. It was the contention of the surety company that the omission to account for and pay the money by Seward was a direct breach of his bond, and that the surety company, recognizing its liability, had a right to pay the amount to the government, and that the surety company thereby became subrogated to the rights of the creditor, the government, as against Seward. It was freely conceded that there had been no malfeasance in office, or any failure to perform his legal obligations as postmaster’ by Seward, except the omission to pay over the money in question to the government, and that the surety company was not claiming that the money had been lost through any negligence or by any wrongful intent on the part of Seward.
 

 It has been the general policy, not only with government employees and appointees, but with state officers, county officers, township officers, and all other public officials, to hold the public official accountable for the moneys that come into his hands
 
 *50
 
 as such official, and his obligation has been held to be as broad as is the obligation of a common carrier of freight received for shipment; that is to say, that when he comes to account for the money received, it must be accounted for and paid over, unless payment by the official is prevented by an act of God or a public enemy; and burglary and larceny and the destruction by fire, or any other such reason, have not been accepted by the courts as a defense against a claim for the lost money. The decisions to this effect are so uniform and so numerous that no useful purpose would be served by restating the law that has been so many times stated so clearly. It is found in the textbooks on the subject, and in the decisions from practically ¡all the states. This principle is no more thoroughly established than is the principle that a surety company paying the debt of the principal debtor thereby becomes entitled to be subrogated to all of the rights of the creditors; and not .only this, but the surety is entitled to have enforced for its benefit against the principal debtor any sécurities that-may be in the hands of the creditor. In other words, the payment by the surety makes the surety the creditor, and then the principal debtor owes him, instead of owing the creditor in the first instance. The reasons given to sustain these two propositions are very strong. In the main, it is said by practically all the cases that it would be distinctly against public policy not to require a public officer to account for and disburse according to law moneys that have come into his hands by virtue of his being such public officer; that it would open the door very wide for the accomplishment of the grossest frauds if public
 
 *51
 
 officers were permitted to present as the defense, when called upon to disburse the money according to law, that it had been purloined or destroyed by some deputy, or other subordinate, connected with the public office. The authorities hold that it is no defense of the public officer, when called upon for the money, to establish that he has deposited it in a bank that was financially sound when the deposit was made, but has since become insolvent.
 

 Some attempt has been made to distinguish between the position of a paid- surety and an accommodation surety. We find the velry great weight of authority against making this distinction. It is said in the decisions that a surety who has undertaken to respond for his principal need not await an action against him compelling him to respond, but that he may save time and expense and pay the creditor direct, and that thereupon there arises against the principal debtor an obligation to reimburse the surety; and in this instance it was wholly immaterial that the principal debtor notified the surety company not to pay, and that, if the surety company did pay, it would pay at its own risk. The surety company’s rights and liabilities were fixed by the execution of the bond, and they could not be altered by the principal debtor. And when the surety company paid, the surety company became the real creditor, and therefore had the right to maintain this action when not reimbursed by the principal debtor as requested.
 

 It is not the tendency of the law to restrict and narrow the instances in which a surety may pay and be subrogated against the principal debtor. On the contrary, the decisions all show that there is a con-
 
 *52
 
 tinning disposition on the part of the courts to extend the class of cases in which the right of subrogation obtains, with much liberality.
 

 It is contended in this case that, if anybody was at fault in the loss of this money, it was a subordinate who was himself under bond to discharge the duties of his office, and that therefore the government should have looked to him and his bondsman, the same surety as in this case, and consequently no right of subrogation as against Seward could arise. We see no merit in this claim. The government was protected by the bond it took from Seward. When the surety company paid, it then stepped into the shoes of the creditor, the government; and the surety company demanded reimbursement from Seward, and brought the action to enforce the reimbursement, because it considered Seward financially responsible, no matter who else might have been responsible in addition.
 

 The practice of requiring public officials to give bond, with approved surety, for the faithful discharge of the duties of their office, is a matter of general knowledge, of which the courts take judicial notice; and, furthermore, the courts will take judicial notice of the rules and practices of the government in requiring governmental officials to account for all moneys that come into their hands, unless excused from so doing by the act of Grod or a public enemy. It is true that some cases hold that the money must actually come under the control of the public official before his liability to account therefor can be said to exist, as herein stated; that is to say, some courts have held that where parcel post packages are sent through the post office department col
 
 *53
 
 lect, and the mail carrier delivers the package, collects the amount due the shipper thereon, and embezzles and appropriates it to his own use, instead of paying it into the money order department and sending the shipper a money order for the amount, the money thus paid by the consignee of the shipper to the mail carrier is a transaction between the shipper and the mail carrier, and is not funds that have come into the possession and under the dominion and control of the postmaster.
 

 It is true that there are some decisions at variance with the principles announced in this opinion, but they fall very short of being in accord with the great weight of authority.
 

 We cite the following authorities as sustaining the position here taken: 25 Ruling Case Law, 1322, 1327; 2 Brandt on Suretyship (2d Ed.), Sections 298 and 558; 5 Pomeroy’s Equity Jurisprudence, Sections 2344, 2345;
 
 State
 
 v.
 
 Harper,
 
 6 Ohio St., 607, 67 Am. Dec., 363;
 
 Zuellig
 
 v.
 
 Hemerlie,
 
 60 Ohio St., 27, 53 N. E., 447, 71 Am. St. Rep., 707;
 
 Poe
 
 v.
 
 Dixon,
 
 60 Ohio St., 124, 54 N. E., 86, 71 Am. St. Rep., 713;
 
 United States
 
 v.
 
 Prescott,
 
 3 How., 578, 11 L. Ed., 734;
 
 Caha
 
 v.
 
 United States,
 
 152 U. S., 211, 14 S. Ct., 513, 38 L. Ed., 415;
 
 Smyer
 
 v.
 
 United States,
 
 273 U. S., 333, 47 S. Ct., 375, 71 L. Ed., 667, 51 A. L. R., 780;
 
 Deal
 
 v.
 
 United States,
 
 (C. C. A.), 11 F. (2nd), 3;
 
 Bryan
 
 v.
 
 United States,
 
 (C. C. A.), 90 F., 473, 53 L. R. A., 218;
 
 United States
 
 v.
 
 Barker,
 
 (C. C. A.), 100 F., 34;
 
 United States
 
 v.
 
 Fordyce,
 
 (D. C.), 122 F., 962;
 
 United States
 
 v.
 
 United States Fidelity & Guaranty Go.,
 
 (C. C. A.), 247 F., 16;
 
 United States Fidelity & Guaranty Co.
 
 v.
 
 Union Bank & Trust Co.,
 
 (C. C. A.), 228 F., 448;
 
 Maryland Casualty Co.
 
 v.
 
 *54
 

 Hjorth,
 
 187 Wis., 270, 202 N. W., 665;
 
 Lewis’ Administrator
 
 v.
 
 United States Fidelity & Guaranty Co.,
 
 144 Ky., 425, 138 S. W., 305, Ann. Cas., 1913A, 564;
 
 State, ex rel.,
 
 v.
 
 Powell,
 
 67 Mo., 395, 29 Am. Rep., 512;
 
 State, ex rel.,
 
 v.
 
 Moore,
 
 74 Mo., 413, 41 Am. Rep., 322;
 
 Nason
 
 v.
 
 Directors of the Poor,
 
 126 Pa., 445, 17 A., 616;
 
 Commonwealth
 
 v.
 
 Baily,
 
 129 Pa., 480, 10 A., 764;
 
 Wilson
 
 v.
 
 Wichita County,
 
 67 Tex., 647, 4 S. W., 67;
 
 Supervisors of Omro
 
 v.
 
 Kaime,
 
 39 Wis., 468.
 

 It was contended in this court that this was not a case of suretyship proper, but that it was a case presenting all the features of .insurance, and that it should be governed by the principles governing insurance policies; and that consequently Seward could not be held liable to the surety company unless he had in some way been guilty of negligence which contributed to the loss of the funds. We have given this feature of the case careful examination, and find ourselves unable to agree with the views of counsel on this point.
 

 The court of common pleas was clearly wrong in directing a verdict in favor of the defendant, and the Court of Appeals committed no error in reversing this judgment. As stated, the main facts in the case are not in dispute between counsel, and on those admitted facts final judgment must be entered here in favor of the National Surety Company.
 

 Judgment affirmed.
 

 Marshall, C. J., Robinson, Jones, Matthias, Day and Allen, JJ., concur.