## YOUNGSTOWN (city) v SHEA, MOORE & ROYAL INDEMNITY COMPANY

Ohio Appeals, 7th Dist, Mahoning Co

No 2492. Decided December 13, 1938

Vern Thomas, Youngstown, for appellee. William E. Pfau, Youngstown, for appellants.

 

## OPINION

By CARTER, J.

This cause is before this court on appeal on questions of law. It is necessary to quote quite extensively from the pleadings in order to secure a clear perspective of the issues involved. Appellee alleges that it is a municipal corporation and that at the general election held in the city of Youngstown on the third day of November, 1931, Mark E. Moore, one of the defendants, was elected to the office of Mayor of the City of Youngstown for the term of four years, beginning January 1st, 1932; that he qualified by taking the oath of office and entered upon the performance of his duties as mayor of the city on January 1, 1932; that each year during his term of office he furnished bond to the city of Youngstown conditioned according to law for the faithful performance of his duties as such mayor; that on the 20th day of December, 1933, he presented his bond to the city of Youngstown in the sum of ten thousand dollars for the period of January 1, 1934, to December 31, 1934, with the Royal Indemnity Company as surety thereon, and among the conditions in said bond was one that Mark E. Moore would faithfully perform all the duties of his office and pay over to the city of Youngstown and account for all funds coming into his hands by virtue of his office as mayor; that as a part of his official duties as such mayor, he was required and authorized, upon the payment of the proper fee therefor, to issue various licenses required by the ordinances of the city of Youngstown and was responsible for an accounting for the payment of these fees to the Director of Finance of the city, that James B. Shea was duly appointed to the office of Secretary to the mayor and that he presented his bond in the sum of five thousand dollars as such secretary to the city of Youngstown with the defendant, Royal Indemnity Company, as surety thereof, conditioned that he would faithfully and truthfully perform all the duties of his office according to law and pay over to the city of Youngstown and account for all funds coming into his hands by virtue of his office as secretary to the mayor; that pursuant to the direction of the mayor, Shea performed the clerical work in connection with the issuing of these licenses, and received on behalf of the mayor the fees therefor; that between the dates of January 1st, 1934, and December 31, 1934, Shea received various license fees in the amount of $105.00 for and on behalf of Mark Moore, Mayor, for the use of the city of Youngstown; that Shea converted said sum to his own use and failed and refused to account and pay over to the city of Youngstown said sum; that the mayor failed and refused to account and pay over to the city of Youngstown the said amount of $105.00, and says that Shea and the mayor did not faithfully perform their duties as such secretary and mayor; that the conditions of the bond have been broken and that there is due the plaintiff from the defendants Shea, Mark Moore and the Royal Indemnity Company the sum of $105.00 with interest. And for a second cause of action it adopts all of the allegations of the first cause of action and further alleges that Mark Moore presented his bond in the amount of ten thousand dollars for the year 1935 with the Royal Indemnity Company as surety thereon, and that Shea also executed his bond in the amount of five thousand dollars for the year 1935 with the Royal Indemnity Company as surety thereon, conditioned as the bonds mentioned and referred to in the first cause of action, and further alleges that between the dates of January 1, 1935, and December 31, 1935, Shea received $2167.32 for and on behalf of the mayor, the same being for licenses issued; that Shea failed and refused to pay over this amount to the city and that the mayor also has failed and refused to so do, and prays judgment against the defendants, Shea, Moore and the Royal Indemnity Company, in the sum of $105.00, and interest thereon, in its first cause of action, and for $2167.32, with interest thereon, on its second cause of action.

The action was prosecuted against the three defendants for the entire money which appeared to be unaccounted for. Shea and Moore filed no pleadings of any kind. The Royal Indemnity Co. filed its separate answer, wherein it admitted on certain occasions it executed certain faithful performance bonds for the defendants, and for want of information, and for the purpose of requiring strict proof thereof, denied each and singular statements and allegations contained in plaintiff's petition except those admitted to be true.

The cause came on for trial to the court, a jury having been waived, and judgment was rendered in favor of appellee against

all defendants in the amount of $105.00 on the first cause of action, and interest, and for the sum of $2167.32 on its second of action, together with interest thereon. Motion for new trial filed and overruled. Appeal is prosecuted to this court by the Royal Indemnity Company only.

The city of Youngstown operates under a home rule charter, and Mark E. Moore was mayor thereof for the term of four years, his term beginning January 1, 1932. Ordinance No. 38567, which was in full force and effect during the incumbency of Mark Moore provides:

"The Mayor's Department shall consist of the personnel here outlined and the salaries to be paid the officers and employes herein enumerated to be as follows: Position Mayor, $7200 per annum. Secretary $2520.00 per annum."

James B. Shea was appointed by the Mayor to the position of Secretary to the Mayor, and gave a bond as hereinbefore indicated. Ordinance No. 32948 provides that:

"No person, persons, firm, partnership, corporation or association of persons shall engage in the various businesses as in this chapter defined without first having secured from the Mayor of the city of Youngstown a license so to do and paying to the Mayor of the city of Youngstown in advance the amount of such license fees as herein provided for each place and stand operated by the licensee."

There was then introduced into evidence various ordinances specifying the various businesses that were required to secure licenses, including the various licenses which were issued, the licensee fees of which were not accounted for.

It will be observed that before any of the persons, partnerships or corporations may do business they must first secure from the mayor of the city a license so to do and pay to the mayor in advance the amount of such license fees. It is therefore clear that the mayor was to issue these licenses and collect the license fees in advance, clearly indicating that the mayor was to receive there license fees and of course would be compelled to account to the city for same. There is no claim made that Mayor Moore embezzled or appropriated these funds to his own use. However, his subordinate appointees apparently failed to account for many of these license fees received by them. The same bonding company was surety for both Shea and Moore.

Mr. Moore testified he had no knowledge of any money coming to or through his office for these licenses; that he never saw any of these licenses. He does testify that the licenses would be issued by Mr. Shea and the payment was supposed to be made to the Finance Director, direct. However, the ordinance to which reference has heretofore been made provides that the Mayor shall collect the fee and under the ordinance it was the mayor's duty to collect same, and if in his place and stead one of his subordinates collected same for him under the holding in the case of Seward v Surety Company, 120 Oh St ▮▮▮▮ 53, the court holds that the head of a department cannot escape legal responsibility for a shortage by attempting to shift responsibility and blame on a subordinate. The court in that case say:

"It has been the general policy, not only with government employees and appointees, but with state officers, county officers, township officers, and all other public officials, to hold the public official accountable for the moneys that come into his hands as such official, and his obligation has been held to be as broad as the obligation of a common carrier of freight received for shipment; that is to say, that when he comes to account for the money received, it must be payment by the official is prevented by an act of God or a public enemy; and burglary and larceny and the destruction by fire, or any other such reason, have not been accepted by the courts as a defense against a claim for the lost money."

"In the main, it is said by practically all the cases that it would be distinctly against public policy not to require a public officer to account for and disburse according to law moneys that have come into his hands by virtue of his being such public officer; that it would open the door very wide for the accomplishment of the grossest frauds if public officers were permitted to present as the defense, when called upon to disburse the money according to law, that it had been purloined or destroyed by some deputy, or other subordinate, connected with the public office. The authorities hold that it is no defense of the public officer, when called upon for the money, to establish that he has deposited it in a bank that was financially sound when the deposit was made, but has since become insolvent."

Now, it is urged that the finding of the lower court is against the manifest weight

of the evidence as to Shea. We might suggest that Shea filed no pleadings in the case, was in default. The action was against him as one of the defendants for the full amount of the defalcation and was prosecuted against all three defendants. It is alleged in the petition that Shea received license fees in the amount of $105.00 and $2167.32 on behalf of Mark Moore, and converted the same to his own use. None of these allegations were by Shea denied. Neither did Shea appear and testify in the case. There was, however, a transcript of the testimony taken by the State Examiner, wherein Shea testified he did not receive but little of the license fees collected. However, there was a question for the consideration of the lower court, and that court found against Shea for the full amount not accounted for, and we cannot say that such finding under all the circumstances in this case is against the manifest weight of the evidence.

It is also urged that the ordinance compelling the mayor to collect these fees was illegal by reason of these ordinances being contrary to the city charter, in that it was the duty of the Director of Finance, under the charter, to collect these license fees. Section 24 of the Charter provides, in part:

"His, (the Director of Finance) duties shall include the keeping and supervision of all accounts, the collection and custody of all public money of the city except funds and accounts of the Board of Education."

We might suggest that no claim of inconsistency of illegality was set up in the answer of the Bonding Company in the lower court. It is rather late to urge such error in this court. However that may be, the mayor and his subordinates undertook the performance of the task imposed by the ordinances which are now urged as being illegal, for the reason that such ordinances compelling the mayor to collect these license fees was contrary to the city charter and therefore illegal, and by reason thereof no liability attached to the mayor in failing to account for same. We do not think that such defense is after these defalcations, tenable. Furthermore, we do not believe that these ordinances are inconsistent with the city charter, as the city charter does not require the city Finance Director to collect all money in the first instance. It would undoubtedly be the duty of the Director of Finance to collect from the mayor these license fees eventually. We

are satisfied that under the evidence in this case the mayor was responsible for the issuing of these licenses and collecting the fees therefor, and if this duty was imposed upon his secretary or subordinate appointees, and they failed to account for the money thus collected, the subordinates and the mayor, together with their bondsmen, are liable for these defalcations.

The finding of the lower court is not against the manifest weight of the evidence; neither is it contrary to law.

Judgment of the lower court affirmed.

NICHOLS, PJ, and BENNETT, J, concur in the judgment.