CITY OF YOUNGSTOWN, APPELLEE, *v.* HINDMAN ET AL., APPELLANTS.

(Decided April 21, 1939.)

Mr. *V. B. Thomas,* for appellee.
Mr. *David C. Haynes* and Mr. *Paul J. Fleming,* for appellants.

PHILLIPS, J.   This is an appeal on questions of law from the Court of Common Pleas of Mahoning county which overruled general demurrers of defendants, Hindman and his surety, the United States Fidelity & Guaranty Company, to plaintiff's petition, and at the close of all the evidence directed a verdict against them in favor of plaintiff city, and sustained a motion to direct a verdict against the plaintiff city in favor of two other defendants, Hallie Baker Broadley and her surety, the Royal Indemnity Company.

Hugh D. Hindman was director of finance and Hallie Baker Broadley was cashier of the city of Youngstown during the administration of Mark E. Moore, as mayor of that city, and each entered into a separate faithful-performance bond with it.

Defendant Hindman's bond provided *inter alia* as follows:

"Now, therefore, the condition of the above obligation is such; that if the above bounden, Hugh D. Hindman, shall during the period beginning January 1, 1934, and ending December 31, 1934, faithfully and truly perform all the duties of his office, and shall pay over and account for all funds coming into his hands by virtue of his said office of director of finance as required by law, then this obligation to be void; otherwise to be and remain in full force and virtue."

The Bureau of Inspection and Supervision of Public Offices of the state of Ohio, pursuant to Section 286, General Code, made a joint and several finding against defendants, Hindman and Broadley, and their sureties, in favor of plaintiff city on account of a shortage in the cashier's office during the administration of Mark E. Moore as mayor of that city, and during the effective period of the above bond, amounting to $8,171.02, for which amount both defendants, Hindman and Broadley, failed to account, and which amount they failed to pay over to plaintiff city at the close of the Moore administration.

Plaintiff filed an action against Hugh D. Hindman and Hallie Baker Broadley and their sureties, United States Fidelity & Guaranty Company and Royal Indemnity Company, respectively, to recover that amount. Plaintiff alleged the appointment of Hindman as finance director and Broadley as cashier, the execution of the bonds, the failure of defendants Hindman and Broadley to faithfully perform their duties and account for and pay over the above sum to plaintiff city, and prayed judgment against all four defendants for that sum.

At the close of plaintiff's case all of the parties moved for directed verdicts, which motions were overruled, and at the close of all the evidence were renewed. Whereupon defendants Hindman, United States Fidelity & Guaranty Company and Broadley renewed their demurrers and all defendants moved to

require plaintiff city to elect against which principal defendant it would proceed. The court overruled the demurrers again and directed a verdict against plaintiff city in favor of defendants Broadley and Royal Indemnity Company, and in favor of plaintiff city against defendants Hindman and the United States Fidelity & Guaranty Company.

Hallie Baker Broadley had been assistant treasurer and, later, cashier of plaintiff city under two forms of government and various mayors for a number of years prior to the appointment of Hindman as finance director. She was originally appointed cashier under the present form of government on January 1, 1924, by the then finance director, and while not formally appointed cashier by the Moore administration had been retained by it.

Since January 1, 1924, plaintiff city, a municipal corporation, has operated under a home-rule charter of its own adoption, Section 24 of which plaintiff claims as authority for its contention. That section reads as follows:

"The director of finance shall be the head of the department of finance. He shall be appointed by the mayor, by and with the approval of council, and may be removed in the same manner. He shall serve until his successor is appointed and qualified. He shall give such bond for the faithful discharge of his duties as the council may by ordinance require. His duties shall include the keeping and supervising of all accounts, and collection and custody of all public money of the city, except funds and accounts of the board of education, and such other duties as may be provided by this charter or by ordinance of council.

"All public money coming into his hands shall be deposited each day in such bank, or banks, as the council may designate by ordinance; and all disbursements of public money shall be by check, showing the name of the payee and the purpose for which the money is

paid. He shall keep a record of all checks issued by him, the name of the payee, and the purpose for which the money was paid.

"No check shall be issued for the payment of any claim, unless such claim be evidenced by a voucher approved and countersigned by the head of the department for which the indebtedness was incurred.

"The finance committee of council shall make an examination of the books and accounts of the director of finance at least once each year, and council may by resolution order an examination of such books and accounts by the finance committee at any time."

There was, in full force and effect, at all times set forth herein an ordinance of the city of Youngstown, No. 38567, the pertinent parts of which read as follows:

"Section 434—That the department of finance shall consist of the personnel herein outlined and the salaries to be paid the officers and employees herein enumerated shall be as follows:

"Cashier         $2,100 per annum."

Defendants claim "that Hallie Baker Broadley, cashier of the city of Youngstown, was at all times an independent, separate officer of the city, responsible directly to the city and not to Hindman, the director of finance, and consequently neither Hindman nor his surety, the United States Fidelity & Guaranty Company, on his official bond are liable for the cashier's misfeasance." And, "that the judgment of the trial court should be reversed and rendered in favor of the United States Fidelity & Guaranty Company and Hugh D. Hindman, its principal, or in the alternative that it be reversed and remanded for trial."

Defendants concede that "the cashier's office is a division of the department of finance and the method of operating that office is under the law prescribed by the department of finance." But defendants contend that "such cashier is an independent officer of the city

and not a mere subordinate of the director of finance; that the cashier is financially responsible directly to the city and not to the director of finance and is appointed by the mayor of the city and not by the director of finance," and that, "therefore, under the facts of the case at bar, Hindman, director of finance, was not in anywise responsible for the negligent acts of cashier Hallie Baker Broadley." Defendants support their position by the fact that defendant Broadley executed her bond directly to the city, and by ordinance No. 38567.

Plaintiff claims: "It is our position regardless of whether or not the cashier was bonded in this case, the head of the department, Hugh D. Hindman, is not excused from liability. His duty in our opinion to account for public funds is absolute and on the status of the record no legal excuse for failure to account is presented." Plaintiff urges that the judgment of the lower court be affirmed, and supports its contention by Section 24 of the Charter.

There is no claim that defendant Broadley embezzled or appropriated these funds for her own use. However, she failed to account for moneys coming into the cashier's office to the amount heretofore named.

Defendant Hindman's testimony is conflicting. He testified that he never knew there was a shortage in the cashier's office until he went to bid defendant Broadley farewell when the term of his appointment had expired, although she gave him a daily bank statement; that he had no supervision or control over her but knew he was, in a way, to supervise the cashier's department; that Mrs. Broadley was working under him in his department, and while, in certain instances he supervised her work and on several occasions had authorized her to advance money to employees, he could not discharge her; that when he took office she continued on in her position without supervision or control by him, just as she had prior to his appointment

as director of finance; that she exercised her own judgment in the conduct of her office and was the only one who had the combination of the vault where the assets of the city were kept.

Defendant Broadley testified she was appointed cashier of the city of Youngstown in 1924, and while not formally reappointed, had been retained by the Moore administration. Her testimony also revealed that at times during the period of her incumbency plaintiff city had difficulty in meeting its payroll. The evidence disclosed that to meet the emergency, director Hindman and the mayor inaugurated a system of advancements to city employees, between pays, known as a "drag system," which was indulged in for some time before any system of accounting for it was installed. This greatly increased the work in the cashier's office, and necessitated Hindman assigning additional help to her department. All of this help had access to and assisted her in counting money and "scrip" which, at the time, was largely used instead of currency.

In this crisis, defendant Broadley did not hire additional help herself, did not look to the mayor to supply it, but turned to and received assistance from her superior, the director of finance, defendant Hindman, upon whom the responsibility for the management of the cashier's office rested.

Section 24 of the Charter provides that "his duties shall include the keeping and supervising of all accounts, and collection and custody of all public money of the city, except funds and accounts of the board of education." Under the charter it was his duty to collect all public money named in the charter and, if instead, one of his subordinates collected the same for him, then, under authority of *Seward* v. *National Surety Co.,* 120 Ohio St., 47, 165 N. E., 537, he cannot escape legal responsibility for shortage by attempting to shift responsibility and blame to a subordinate.

In the case of *City of Youngstown* v. *Shea,* 28 Ohio Law Abs., 418, in which a similar question was presented and in which the same city ordinance and section of the charter were involved, this court held, and Judge Carter in his opinion said: "The court holds that the head of a department cannot escape legal responsibility for a shortage by attempting to shift responsibility for a shortage to and blame on a subordinate." We now adhere to this holding.

Time will not permit us to discuss the evidence further, but considering all of the evidence as disclosed by the record, and studying the section of the charter and city ordinance, to both of which reference has been made, it is clear to us that the office of cashier of the city of Youngstown is not a separate and distinct office, but is an integral part of the department of finance of that city. Under authority of the *Seward* and *Shea cases, supra,* if the defendant Broadley failed to account for the money received, expended by and cleared through the office of the cashier, the director of the finance department, together with his surety, are liable for these defalcations.

We have examined the general demurrers filed by defendants Broadley and the Royal Indemnity Company, and find that the lower court did not err in overruling them, or in any of the respects claimed. From what we have said it follows that the judgment of the lower court should be and hereby is affirmed.

*Judgment affirmed.*

NICHOLS, P. J., and CARTER, J., concur.