## SMYER ET AL. *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

No. 131. Argued January 14, 1927.—Decided February 21, 1927.

Moneys collected by a post office official under the Act of August 24,
1912, upon C. O. D. parcels, and held by him for use by him in
purchasing money orders to be sent to the senders of the parcels,
are not "money order funds," within Rev. Stat. § 4045, nor "public money," within § 3846. Pp. 335, 336.

6 F. (2d) 12, reversed.

APPEAL from a judgment of the Circuit Court of Appeals which affirmed a judgment for the United States, in an action in the District Court against a postmaster and his surety, to recover money embezzled by an assistant superintendent of mails.

*Mr. E. J. Smyer* for the appellants.

*Mr. Gardner P. Lloyd,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This action was brought to recover upon the official bond of Smyer, who was postmaster at Birmingham, Alabama, the amount of moneys embezzled by one Smith, Assistant Superintendent of Mails at that office. The moneys came into Smith's hands as collections made by him upon numerous C. O. D. parcels or collected upon such parcels by letter carriers and turned over to him. The condition of the bond is that the postmaster "shall faithfully discharge all duties and trusts imposed on him by law and by the regulations of the Post Office Department."

All parcel post matter which came to the office was in charge of Smith. Parcel post matter and money order business were separately handled in different departments of the office. It was Smith's duty to receive and handle C. O. D. parcels and collect from the addressees the amounts called for upon tags attached to the parcels, and thereupon purchase from the money order department money orders payable to the senders of the parcels for the several amounts. These tags, signed by the addressees, were considered by the Post Office Department as applications for money orders payable to the senders of the parcels. The moneys so collected were converted by Smith and never came into the hands of anyone connected with the money order department. The court below affirmed a judgment in favor of the government. 6 F. (2d) 12.

The right of the government to recover depends upon the construction and application of §§ 4045 and 3846 Revised Statutes, copied in the margin.* We are of opinion that under neither section is there liability upon the bond.

---

* Sec. 4045. All money received for the sale of money-orders, including all fees thereon, all money transferred from the postal revenues to the money-order funds, all money transferred or paid from the money-order funds to the service of the Post-Office Department, and all money-order funds transferred from one postmaster to another, shall be deemed and taken to be money-order funds and money in the Treasury of the United States. And it shall be the duty of the assistant treasurer of the United States to open, at the request of the Postmaster-General, an account of " money-order funds " deposited by postmasters to the credit of the Postmaster-General, and of drafts against the amount so deposited, drawn by him and countersigned by the Sixth Auditor.

Sec. 3846. Postmasters shall keep safely, without loaning, using, depositing in an unauthorized bank, or exchanging for other funds, all the public money collected by them, or which may come into their possession, until it is ordered by the Postmaster-General to be transferred or paid out.

The language of § 4045, so far as pertinent here, is that " all money received for the sale of money-orders, including all fees thereon, . . . shall be deemed and taken to be money-order funds and money in the Treasury of the United States."   We are of opinion that, until the money intended for the purchase of money orders, reaches the hands of the postmaster, or some employee of the Post Office, authorized to issue money orders, it has not been received for the sale of money orders within the meaning of the language quoted.   These sums of money were received, not for the *sale*—that is, as a price paid in for money orders—but for the *purchase* of money orders. That by the words, " for the sale of money-orders," was meant a completed purchase, is borne out by the phrase immediately following, " including all fees thereon." There could, of course, be no money received for fees on the sale of money orders here until actual payment to the money order department.   The section further requires that it shall be the duty of the assistant treasurer, at the request of the Postmaster General, to open an account of " money-order funds " deposited by postmasters to the credit of the Postmaster General, etc.   It cannot have been intended that money, collected for the specific purpose of buying a money order for the sender of a parcel, might be deposited to the credit of the Postmaster General as " money-order funds " before being put to that use.   Section 4045 was enacted on June 8, 1872, while the act providing for the collection on delivery of articles sent by parcel post was not passed until August 24, 1912, c. 389, 37 Stat. 539, 558.   Certainly, when § 4045 was originally enacted, Congress could have had in mind only a completed purchase, since a situation like the present was not then provided for.   And while that consideration would be of no value where the language of the statute plainly applied to conditions subsequently arising, it may aid to some degree in the construction of a statute where, as here, the words are of doubtful import.

In *United States* v. *Mann*, 160 Fed. 552, a similar col-
lection was made by a rural letter carrier, and having
failed to purchase a money order for the sender he was
indicted under § 4046 of.the Revised Statutes for convert-
ing to his own use " money-order funds." The contention
of the government as to the application of § 4045 was the
same as here, but the court held that the money did not
constitute money order funds and directed a verdict of
not guilty. In the course of an opinion subsequently filed,
it was said:

" It is nothing more or less than money which the
regulation of the Postmaster General authorizes his quali-
fied employé to accept from the citizen, with the duty
of purchasing a money order therewith. It becomes no
part of the ' money order funds ' until that purchase has
been made, and then it is within the category of the first
class of the definition, viz., ' money received for the sale
of money orders.' "

Nor is the case for the government helped by the more
general language of § 3846. By that section, postmasters
must keep safely " all the.public money collected by them,
. . . until it is ordered by the Postmaster-General to
be transferred or paid out." The collections made by or
turned over to Smith were in his hands for the purpose,
and only for the purpose, of being remitted in the form
of money orders to the persons for whom the collections
were made and to whom the moneys equitably belonged.
True, these moneys came to Smith's hands under color
of his office, but subject to no form of disposition except
for the use to which they were specifically devoted. Pub-
lic money, within the meaning of § 3846, obviously is
money belonging to the United States in such sense that
it may be ordered by the Postmaster General to be trans-
ferred or paid out. It seems clear that the sums of money
here in question were not subject to that control until

after they had reached the hands of the money order department.

There is a clear distinction between public money and these sums of money received by an employee of the office charged with the specific duty of transmitting them to their real owners in a definitely prescribed manner. That money though received under color of office may not be public money, is clearly recognized by § 225 of the Criminal Code, c. 321, 35 Stat. 1088, 1133, which defines the offense of embezzlement in part as the conversion by any person in the postal service of any money coming into his hands under color of his office, whether the same shall be the money of the United States or not.

*Judgment reversed.*

The CHIEF JUSTICE, MR. JUSTICE HOLMES and MR. JUSTICE STONE, dissent.