Shirley Wohl Kb am, J.
Respondent is charged with being a juvenile delinquent in that he did acts which, if done by an adult, would constitute the crime of murder under section 125.25 of the Penal Law and the crime of possession of weapons and dangerous instruments and appliances under section 265.05 of the Penal Law. The petition alleges that the respondent on January 9, 1974 intentionally caused the death of a man by shooting him in the head while another juvenile, also presently before the court, held a knife against the victim’s, body. Section 125.25 of the Penal Law provides that murder is a class A felony.
*195 The respondent was 15 years old at the time of the alleged act and thus, if he is adjudicated a juvenile delinquent he could he incarcerated in Elmira Reception Center for a period of three years. Subdivisions (b) and (e) of section 758 of the Family Court Act provide that:
“ (b) Upon an adjudication of delinquency of a person who is fifteen years of age at the time of the commission of any act which, if committed by an adult, would be a class A or a class B felony as defined in the penal law, commitment may be for males to Elmira reception center and for females to the care and custody of an association, agency, society, or private religious institution or to the care and custody of a suitable institution maintained by the state or any subdivision thereof, such as Westfield state farm.
“ (c) No commitment under this section may exceed three years.”
The respondent moved for a jury trial or in the alternative for an order precluding this court, in the event that the respondent is adjudicated a juvenile delinquent, from committing the respondent to Elmira Reception Center.
There is a lack of conformity with respect to treatment under subdivision (b) of section 758 of the Family Court Act in the Family Courts of this State resulting in inequality to the juvenile respondents before such courts. Generally, the courts in the counties of the City of New York have held that, in order to avoid a constitutional problem with respect to a trial by jury, commitments under section 758 of the Family Court Act to Elmira have been limited by a pretrial ruling to a maximum of six months. Matter of Reginald “ S.” (64 Misc 2d 1002, 1006) set forth three alternative courses of action that the court could proceed upon in this type of situation: “ a Family Court Judge could, in advance of trial, rule in a particular case that an accused juvenile is not in jeopardy of an Elmira prison commitment of any kind, or, that any Elmira prison commitment shall be confined to six months, or, in the alternative, that the boy is subject to a three-year indeterminate sentence in the New York State Training School at Otisville or New Hampton, or, of course, lesser disposition in the form of probation or the like.”
The court in Matter of Anthony F. (69 Misc 2d 932, 934) noted that a six months’ confinement to Elmira was of questionable constitutionality, “ even this much commingling with *196 persons over 16 deemed adults in the Penal Law seems of doubtful constitutionality.”[1]
The Supreme Court in Matter of Rice v. Cory (73 Misc 2d 813, 815) referred approvingly of the action taken by the court in Anthony F. (supra), and adopted it in Bice: “ The Family Court hearing will proceed without a jury, provided, however, that if the petitioner is adjudicated a juvenile delinquent and if it is determined that detention is appropriate, then the petitioner shall not be committed to Elmira Reception Center pursuant to subdivision (b) of section 758 of the Family Court Act ”.
Then, in the Matter of Garrett (74 Misc 2d 961, 963) the Family Court in Monroe County committed an adjudicated juvenile delinquent to three years at Elmira pursuant to subdivision (b) of section 758 of the Family Court Act. The Monroe court noted the decisions in Rice (supra), Reginald S. (64 Misc 2d 1002, supra); and Anthony F. (supra), but found the reasoning therein “ unnecessarily strained.” The court in Garrett seemingly feels that a juvenile delinquent can be subjected to an adult “ penalty ” rather than the “ parens patriae ” concept without according him the adult’s right of due process (p. 963): “ There seems to be no truly logical connection between the basic right to a ‘ fundamentally fair ’ adjudicatory hearing as contemplated by the Supreme Court of the United States in McKeiver v. Pennsylvania (403 U. S. 528) and the ultimate disposition (penalty) imposed on the adjudicated juvenile delinquent under subdivision (b) of section 758 of the Family Court Act. In simplest terms, what does one have to do with the other ? More importantly, ultimate disposition and sentencing of the fairly adjudicated juvenile must reflect with equal fairness the delicate balance between the rights of the individual and the rights of the society in which he lives.” It is this very concept of an adult punishment which in the opinion of this court shifts the delicate balance of a child’s limited rights exchanged for his rehabilitation treatment and an adult’s full due process with *197 its potential sentence encompassing punitive retribution aspects.[2] If a child receives the same punishment as an adult but is accorded only limited due process, he receives, in the words of Mr. Justice Fobtas in Kent v. United States (383 U. S. 541, 556): “ the worst of both-worlds * * * he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children.”
There is an inherent unfairness in the over-all situation, since within the State of New York an adjudicated juvenile delinquent, within the ken of subdivision (b) of section 758 of the Family Court Act, will in the southern part of this State go to trial assured of a maximum Elmira sentence of six months and in a county to the north another child respondent may receive a three-year commitment to Elmira on substantially similar facts, due solely to the happenstance of the trial location.
This court notes the heinous act allegedly committed by the juvenile respondent herein, namely the alleged taking of another human life. This court is of the opinion that the judicially selfimposed pretrial practice of restricting commitment to Elmira for six months in this case would benefit neither the respondent nor society. If in fact this respondent has committed this vicious act, he may well require the entire three-year period for true rehabilitation. To continue the game of revolving-door commitments which neither rehabilitates the respondent nor protects the community is a sad waste.
Thus, in line with the reasoning of many of my colleagues, it is the opinion of this court, also, that the possibility of a three-year commitment to Elmira, a “ medium security facility ” populated by inmates between 16 and 30 years of age[3] who have been granted the right to trial by jury, necessitates the granting of the respondent’s motion for a trial by jury, inasmuch as the allegations are too grievous for a pretrial limitation of potential “ sentence.”
The notion of a jury trial in a juvenile delinquency proceeding is not new;[4] almost as soon as the parens patriae concept *198 had been introduced with respect to the child respondent,[5] the right to a trial by jury was claimed. The basis that is generally given when a jury trial is denied is that the State is not prosecuting the juvenile respondent for a specified crime and that the juvenile court proceedings are informal, concerned with rehabilitation, not punishment and retribution.
The United States Supreme Court cases have provided a framework in which the Family Court is to accord the juvenile respondent with due process. Matter of Gault (387 U. S. 1, 49-50) established that where a juvenile faces a loss of liberty, it would be entirely realistic not to regard such delinquency proceedings as “ criminal ” for certain purposes, “ To hold otherwise would be to disregard substance because of the feeble enticement of the ‘ civil ’ label-of-convenience which has been attached to juvenile proceedings.” Thus a juvenile chargéd with being a delinquent is constitutionally entitled to notification of the issues involved, benefit of counsel, protection against compulsory self incrimination and confrontation of the witnesses against him.
In Duncan v. Louisiana (391 U. S. 145) the court held that a trial by jury is a fundamental constitutional right applicable to the States via the Fourteenth Amendment. Such trial by jury is to be accorded in proceedings involving serious charges, since the right to a jury trial was among those " fundamental principles of liberty and justice which lie at the base of all our civil and political institutions ” (391 U. S. 145, 148, quoting Powell v. Alabama, 287 U. S. 45, 67, and is “ basic in our system of jurisprudence ” (supra), quoting Matter of Oliver (333 U. S. 257, 273) and “ is a fundamental right, essential to a fair trial,” (supra), quoting Gideon v. Wainwright (273 U. S. 335, 343-344).
A yardstick measurement was set forth in Baldwin v. New York (399 U. S. 66). Baldwin held that a jury trial is required as a matter of due process where there is a possibility of confinement for more than six months.
*199 Chronologically, the' next major Supreme Court case in the area, Matter of Winship (397 U. S. 358) held that the standard of proof for juveniles as for adults is “ beyond a reasonable doubt.”
The time was thus ripe in 1971 for McKeiver v. Pennsylvania. (403 U. S. 528). Duncan and Baldwin equated jury trials with due process, and Gault held that juveniles were entitled to due process. Thus in McKeiver the question was basically whether things equal to the same thing were equal to each other, namely, whether juveniles were entitled to a jury trial as a matter of due process. The court held that it was not necessary, at least as of that time (403 U. S. 528, 551) to so provide. However, unlike the instant case under consideration, the respondents in Ictócr except ÍQI Terry veie ptart on probation and the decision does not allow for a comparison of institutions, nor does it specifically address itself to the type of institution with regard to its relationship to trial by jury.
In view of the fact that subdivision (b) of section 758 of the Family Court Act deals specifically with an adult-type institution which is penal in nature, and whose other inmates have been accorded the right of such trial, the juvenile is entitled to a trial by jury, since the benevolent paternalistic rehabilitative atmosphere which is generally the essence of a delinquency proceeding is not realistically controlling in such a case.
An honest assessment of this situation is that a 15-year-old can be sent to prison without a jury trial, while a 16-year-old can only be sent to Elmira with benefit of a jury trial, and 14-year-olds cannot be sent there at all.
To hide behind labels of “ criminal,” “ civil,” or “quasi-criminal ” or to consider administrative convenience would be to deny 15-year-olds the right to which they are constitutionally entitled; therefore, after a review of the applicable law we are of the opinion that the respondent is entitled to a jury trial.

. The very recent Court of Appeals decision) Matter of Ellery C. (32 N Y 2d 588, 591), dealing with a PINS situation held that, “Children in need of supervision should not be placed in institutions in which juvenile delinquents are confined.” The court went on to state that such integrated confinement “may well result in his emerging from his incarceration well tutored in the ways of crime.” It logically follows, therefore, that a 15-year-old delinquent may well emerge from his incarceration with hardened adult criminals having had his .juvenile criminal skills increased and intensified.

. Note that even juveniles between the ages of 16 and 19, although eligible for youthful offender treatment, constitutionally are entitled to a jury trial before incarceration in a reformatory. (People v. Michael A. C., 27 N Y 2d 79; People ex rel. Browne v. Kendall, 62 Misc 2d 196; People v. Day, 61 Misc 2d 786.)

. Department of Correctional Services, “ Characteristics of Inmates Under Custody 1972,” 12 (voL 8, No. 3).

. See Commonwealth v. Fisher (213 Pa. 48).

. See generally, Mack, “ The Juvenile Court,” 23 Harv. L. Rev. 104 (1909). In Illinois in 1899 the first juvenile court statute was enacted. Until that time following English law there was a rebuttable presumption that an offender 7 but under 14 years old was incapable of distinguishing between right and wrong. Any offender over 14 years of age was treated as an adult. Thus until the turn of the century a respondent the age of the respondent, herein, would have been accorded a jury trial. Note, the Constitution of the State, of New York (art. I, § 2) guaranteeing a trial by jury in all cases it has been used in heretofore.