UNITED STATES, Appellee,

v.

Melvin A. BURGE, Private, U.S. Marine Corps, Appellant.

No. 30,302.

U. S. Court of Military Appeals.

May 7, 1976.

---

*Lieutenant B. Karl Zobrist*, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Commander Jeffrey H. Bogart*, JAGC, USN.

*Lieutenant J. W. Malley, Jr.*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress*, USMC.

## OPINION OF THE COURT

FERGUSON, Senior Judge:

The appellant was convicted, contrary to his pleas, by a military judge sitting as a special court-martial, of robbery and assault and was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, and forfeitures of $100 per month for 6 months. Both the findings and the sentence have been approved at all levels below. We granted review to consider the admissibility of two items of evidence which served to link the appellant to the corpus delicti of the offenses charged. Believing that both were properly admitted under the circumstances of this case, the decision below must be affirmed.

A brief recitation of the facts surrounding the incident is important. As Private First Class Wolanin was walking along a side street in Koza, Okinawa, during the early morning hours of December 30, 1975, two men—one tall and the other shorter—approached him. When he remarked to them, "How's it going," they made no reply. On passing the duo, Wolanin was struck on the side of the head by the shorter of them, and as he turned around the taller man hit him on the top of his head "with something . . . like a hammer." The blow put Wolanin into a "sort of . . . state of shock." Wolanin's assailants pulled off his leather jacket, took his wallet from his pocket, removed his wristwatch, and fled. Wolanin followed. He later testified that upon rounding a corner, he saw the two individuals in the company of a Japanese policeman. The police had stopped the two because they had become suspicious when they had seen one of them stuffing something under a parked car. As Wolanin came running up, the police were in the process of checking the identification cards of the two Americans.

Without defense objection,[1] Wolanin testified that he "identified them right there that those were the two that robbed me." He stated that he also saw and identified his jacket,[2] which the police had retrieved from behind the parked car, and his wristwatch,[3] which the police had removed from the pocket of the shorter suspect. Also, he recalled at trial that one of his attackers had worn a "reddish orangish shirt." He estimated that a few minutes, and no more than five, had elapsed between the assault and his identification of the robbers.

However, Wolanin indicated at trial that because of the lapse of approximately 3 months between the incident and the trial, he no longer could positively identify anyone as his assailants. However, he was permitted to testify as to his out-of-court statements identifying them:

I don't remember their exact words but I told them that, the Japanese Police, that those were the two that robbed me. I told them right there on the spot.

The victim's testimony is supported by that of Mr. Ryoko Okane, one of the Japanese policemen who had stopped the two Americans. He indicated that as he was checking the identification of the two men,

---

1. As the nature of this testimony is hearsay, any failure of the defense counsel to object thereto is of no import, for the hearsay, if not otherwise admissible, "does not become competent evidence by reason of a mere failure to object to its reception in evidence." Paragraph 139*a*, Manual for Courts-Martial, United States, 1969 (Rev.).

2. Prosecution exhibit 1.

3. Prosecution exhibit 2.

another man came running up, falling on the way, and said that he had just had his jacket, wristwatch, and wallet stolen. The man, Okane testified, then identified the jacket they had retrieved as his own and the wristwatch they had discovered, likewise, as having just been stolen from him. The pictures on the ID cards produced by the two suspects were, according to Okane, those "of the offenders" and also disclosed their names. The men were taken in separate police cars to the Koza police station. There, an arrest report for each was prepared, and the articles taken at the site of the arrest were impounded.

The extrajudicial statements of Wolanin, which identified his assailants as the men that the Japanese police had stopped and subsequently had arrested, are the subject of the first evidentiary objection raised by the appellant.

Later in the trial, the military judge, over defense objection, admitted as prosecution exhibit 3, a document described as a military police desk blotter. Prior to the ruling, Master Sergeant W. W. Kenner, Jr., in order to lay the requisite foundation for the document's admission, testified that he was the Administrative Officer of the Office of the Provost Marshal, Marine Corps Base, Camp Butler, and the custodian of all official records of the office. He identified the blotter as one of the office records, and stated that it was a chronological record of all events in a particular police station during a 24-hour period. Additionally, he recounted the "normal police procedure" for obtaining the information upon which entries in the blotter were predicated. In instances in which the Japanese police had arrested an American serviceman in Koza, the Japanese would telephone and through an interpreter notify the American Armed Forces Police desk sergeant at Camp Sukiran of the fact of custody, and they would provide brief information as to what had happened, including details as to the time and location of the offenses and the names of the alleged offender, the victim, and witnesses. In turn, if a Marine was the arrested person, the Armed Forces Police desk sergeant would report the matter to the provost marshal's office at South Zone. Further aspects of this procedure need not now be discussed; suffice it to say that ultimately certain information relative to the arrest of the appellant in the normal course of things found itself in the military police blotter.

The police blotter is the subject of the second evidentiary objection raised by the appellant. It is the combination of this hearsay evidence which identifies the appellant as one of the perpetrators of the crimes.

## THE VICTIM'S STATEMENTS OF OUT-OF-COURT IDENTIFICATION

Paragraph 139*a*, Manual for Courts-Martial, United States, 1969 (Rev.), defines hearsay as

[a] statement which is offered in evidence to prove the truth of the matters stated therein, but which was not made by the author when a witness before the court at the hearing in which it is so offered.

By definition, then, the victim's in-court references to his extrajudicial declaration of identity are hearsay. However, all hearsay is not proscribed, for there are several well-established exceptions to the general exclusionary rule.[4] One of these is the spontaneous exclamation. Paragraph 142*b*, MCM, discusses this theory:

An utterance concerning the circumstances of a startling event made by a person while he was in such a condition of excitement, shock, or surprise, caused by his participation in or observation of the event, as to warrant a reasonable inference that he made the utterance as an impulsive and instinctive outcome of the event, and not as a result of deliberation or design, is admissible as an exception to the hearsay rule to prove the truth of the matters stated. . . .

An exclamation is not admissible as a spontaneous exclamation unless independent evidence of the startling event

---

4. *See* paragraphs 140–46, MCM.

which gave rise to it and of an opportunity on the part of its maker to observe the event is introduced.

We believe that the victim's statement of accusation to the Japanese police at the point of arrest was a spontaneous exclamation within the limits of the Manual discussion. The utterance concerned an assault upon and a robbery of the declarant but a few minutes earlier, and it was made while he, quite obviously, was still in an emotionally excited and shocked state of mind therefrom. We are convinced that a reasonable inference is permissible that the victim's exclamations were an impulsive and instinctive result of the attack and were not made with any deliberation or design. Further, the jacket and the wrist-watch discovered at the time of the arrest constitute all the independent evidence necessary to support the exclamation.

■ In making his assertion of error, the appellant relies upon paragraph 153a, MCM, and its interpretation by this Court in *United States v. Parham,* 14 U.S.C.M.A. 161, 33 C.M.R. 373 (1963). However, this authority is not controlling under the facts of this case. Paragraph 153a reads in material part:

> When in his testimony a witness identifies the accused as being, or not being, a participant in the offense or makes any other relevant identification concerning a person in the courtroom, evidence that on a previous occasion the witness made a similar identification is admissible to corroborate his testimony as to identity, even if the credibility of the witness has not been directly attacked. In such a case, the identifying witness himself and any person who has observed the previous identification may testify concerning it.

Appellant urges that since this provision permits the use of an out-of-court identification to corroborate an in-court identification, unless there *is* an in-court identification, the out-of-court statement is not admissible. We do not read this Manual provision as so limiting, for it clearly by its terms does not *exclude* hearsay statements which *otherwise* qualify for admission under one of the recognized hearsay exceptions. Rather, it simply permits admission of the out-of-court identification under a certain prescribed circumstance *regardless* of whether a hearsay exception applies. Our *Parham* decision is not to the contrary, for the out-of-court identification there involved a line-up and it constituted hearsay evidence not otherwise admissible under any of the exceptions found in paragraphs 140 through 146 of the Manual. There, we simply held that neither was it admissible under paragraph 153a, in the absence of an in-court identification.

Therefore, we hold that any limitation in paragraph 153a or in our decision in *United States v. Parham, supra,* placed on the admissibility of an out-of-court identification does not affect extrajudicial statements, even though identifying in nature, which otherwise qualify for admission as an exception to the general hearsay rule. As Wolanin's declaration was a spontaneous exclamation, his references thereto properly were permitted in his testimony.

### MILITARY POLICE DESK BLOTTER

■ At trial, as earlier noted, the defense counsel unsuccessfully objected to the admission into evidence of a military police blotter, prosecution exhibit 3, which, among other information, reflected the following data: the name and related identifying information of the appellant; the charge for which he had been arrested, as well as the time and place of the arrest; the alleged victim of the offense; the arresting agency, viz., the Japanese police; and the chain of custody—that is, from the Japanese police to the American Armed Forces Police to the military police.

This matter was the subject of the opinion of the Navy Court of Military Review in this case, authored by Chief Judge Cedarburg, which appears at 50 C.M.R. 200 (1974). In a thoroughly documented and well-reasoned opinion, that court ruled that the military police blotter

qualified as an official record [5] which in this trial was duly authenticated as such. We hereby adopt that fine opinion, *emphasizing* to trial practitioners and to appellate authorities alike, the *limitations* set out in that opinion, to the *portions* of the blotter which are admissible [6] and as to the *use* to which the blotter as an evidentiary item may be put.

The decision of the United States Navy Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

COOK, Judge (concurring):

I agree that both of the challenged items of evidence were properly admitted at trial. However, my reasons for admitting the evidence of previous identification are different from the majority's.

Treating the statement of identification by Wolanin to the Japanese police, while on the street near the scene of the robbery, as a spontaneous exclamation does not, in my opinion, fully answer the accused's present objection. Wolanin testified to two other out-of-court statements of identity. He stated that after the street encounter, he saw "the two people" that robbed him at the Japanese police station, and the fair inference is that he identified the robbers again for the reports of arrest that were prepared by the Japanese. Similarly, he maintained he later saw the robbers at the Armed Forces police station. As a Department of Defense Form 629 (Receipt for Prisoner or Detained Person) was prepared there for the accused, it again is fairly inferrible that Wolanin, as the victim, was questioned about the incident and identified the persons in custody as the robbers. Neither of these identifications can possibly qualify as spontaneous utterances.

5. Paragraph 144*b*, MCM.

6. The entry on the blotter as to the medical treatment is not within the normal routine of the operations of the provost marshal's office, as described by Sergeant Kenner. Therefore, that entry should have been excluded, but its erroneous admission did not harm the accused, as to either the merits or the sentence. Neither the fact, nor the extent of the injury inflicted upon Wolanin, was disputed. More important-

In my opinion, the extrajudicial identifications by Wolanin were not hearsay. The accused's contention that they are hearsay is founded on paragraph 153*a* of the Manual for Courts-Martial, 1969 (Rev.), and the construction he deems it was accorded by this Court in *United States v. Parham*, 14 U.S.C. M.A. 161, 162–64, 33 C.M.R. 373, 374–76 (1963). The Manual provision reads as follows:

When in his testimony a witness identifies the accused as being, or not being a participant in the offense or makes any other relevant identification concerning a person in the courtroom, evidence that on a previous occasion the witness made a similar identification is admissible to corroborate his testimony as to identity, even if the credibility of the witness has not been directly attacked. In such a case, the identifying witness himself and any person who has observed the previous identification may testify concerning it.

The accused construes the quoted passage to mean that a witness is not to be allowed to testify to a previous out-of-court identification he made of the perpetrator of the offense charged unless, in the courtroom, he has first identified the accused as the wrongdoer. In the language of his brief, "[w]ithout an in-court identification, this evidence [a previous extrajudicial identification] must be put to one side." The difficulty with this argument is that the quoted section of the Manual is not the only provision on the subject. The section is part of a general discussion of the credibility of witnesses, and it sets out the general rule that a witness cannot enhance his credibility by showing that he had, out of court, made statements consistent with his trial testimony. Paragraph 153*a*, MCM. That rule is

ly, the nature of the medical treatment he received was irrelevant to the merits in that the only issue was the identity of the accused as one of the robbers. As to the sentence, Wolanin himself testified to the treatment he received so the matter was already properly before the court. We are convinced, therefore, that the erroneous admission in evidence of this entry was harmless to the appellant.

inapplicable to Wolanin. At trial, Wolanin did not, and expressly admitted he could not, identify the accused as one of the robbers. Obviously, therefore, he was not offering his on-the-scene and police station identifications as corroborative of his in-court testimony.

In material part, paragraph 139a of the Manual defines hearsay as a statement offered to prove the truth of the matters stated therein, "but which was not made by the author when a witness before the court at the hearing in which it is so offered." Measured by this definition, Wolanin's references to his extrajudicial declarations of identity are hearsay, but not all such extra-judicial statements are inadmissible. The Manual goes on to point out that an out-of-court statement is admissible for the truth of the matters recited in it if the statement is "adopted by the witness as a part of his testimony at the hearing." *Id.* The statement is consistent with the rule in Federal civilian courts. Thus, the draftsmen of the new Federal Rules of Evidence have noted that if a witness "admits on the stand that he made the [prior out-of-court] statement and that it was true, he adopts the statement and there is no hearsay problem." Fed.R.Ev. 801(d)(1), Advisory Committee Note. A recent amendment to Rule 801(d)(1) expressly provides that a prior statement by a witness which is "one of identification of a person made after perceiving him" is not hearsay where the "declarant testifies at the trial . . . and is subject to cross-examination concerning the statement." Discussing the rationale of the amendment the House Report made the following pertinent comments: [1]

Courtroom identifications can be very suggestive. The defendant is known to be present and generally sits in a certain location. Out-of-court identifications are generally more reliable. They take place relatively soon after the offense, while the incident is still reasonably fresh in the witness' mind. Out-of-court identifications are particularly important in jur-isdictions where there may be a long delay between arrest or indictment and trial. As time goes by, a witness' memory will fade and his identification will become less reliable. An early, out-of-court identification provides fairness to defendants by ensuring accuracy of the identification. At the same time, it aids the Government by making sure that delays in the criminal justice system do not lead to cases falling through because the witness can no longer recall the identity of the person he saw commit the crime.

Allowing for the various recognized exceptions of necessity, such as a dying declaration, the vice of admitting into evidence against an accused an out-of-court declaration by another for the truth of the facts recited in it is that it denies the accused the Sixth Amendment right to confront and cross-examine the declarant. No such denial occurs, however, when the declarant is a witness and adopts his previous out-of-court statement. The Supreme Court has addressed this circumstance in a number of cases. Illuminative of the rule prescribed by the Manual for Courts-Martial and the Federal Rules of Evidence is the following excerpt from its unanimous opinion in *Nelson v. O'Neil*, 402 U.S. 622, 629 (1971):

The short of the matter is that, given a joint trial and a common defense, Runnels' testimony respecting his alleged out-of-court statement was more favorable to the respondent than any that cross-examination by counsel could possibly have produced, had Runnels "affirmed the statement as his." It would be unrealistic in the extreme in the circumstances here presented to hold that the respondent was denied either the opportunity or the benefit of full and effective cross-examination of Runnels.

We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant con-

---

1. H.R.Rep.No.94–355, 94th Cong., 1st Sess. 3 (1975), U.S.Code Cong. & Admin.News 1975, pp. 1092, 1094.

cerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments.

In *United States v. Irby*, 517 F.2d 506 (4th Cir. 1975), a witness testified that he could not identify the accused as the perpetrators of the crime; but he also testified that at the time of the offense he had identified two persons as the culprits from a group of photographs shown to him. The Court of Appeals sustained the trial judge's ruling admitting the photos into evidence. In *Johnson v. State*, 338 A.2d 124 (Del. 1975), applying a state law having a requirement of adoption of an out-of-court statement like that of the Manual, the Supreme Court of Delaware held admissible pretrial statements by the victim of a rape as to the physical characteristics of the rapist, although she testified at trial she "could not identify the defendant." *Id.* at 127. *United States v. Parham, supra*, is not to the contrary. There, the witness could not identify the accused as the person who committed the offenses. Unlike Wolanin, however, the witness in *Parham* rejected the idea that he had previously identified the accused. Thus, asked whether he had "picked out a man" at a lineup the day after the offenses, he responded in a way that led the court to describe his answer as "no real identification." *Id.* at 164 n. 2, 33 C.M.R. at 376. Among other things, the witness conceded that his assailant might "not even [have been] in the lineup." *Id.* at 163, 33 C.M.R. at 375.

As I read Wolanin's testimony, I conclude that he effectively adopted the declarations he made on the night of the crime as to the identity of the persons who had robbed him. He referred to, and repeated as present assertions of fact, prominent physical aspects of the robbers. In similar form, he remarked on the color of the shirt worn by one of the robbers. Even while acknowledging that he could not "at this moment" identify the robbers because of the lapse of time between the offense and the trial, he *insisted* that he knew them when he saw them in the custody of the Japanese police and told them "right there on the spot"

that they were "the two that robbed me." It is indeed true that nowhere in his testimony did Wolanin specifically say, "I adopt my previous declarations as to the identity of the robbers," however, the import of what he did say is unquestionably adoptive. I conclude, therefore, that the trial judge did not err in failing, on his own initiative, to strike Wolanin's previous statements as to the identity of the persons who robbed him.