UNITED STATES

v.

John Henry LESLIE, 304 58 9455, Postal Clerk Seaman Recruit (E–1), U. S. Navy.

NCM 79 0262.

U. S. Navy Court of Military Review.

25 April 1980.

LT Steven A. Curlee, JAGC, USNR, LT David S. Durbin, JAGC, USNR, CDR S. Gaeta, Jr., JAGC, USN, CDR Walter J. Landen, JAGC, USN, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

Before BAUM, PRICE and MICHEL, JJ.

MICHEL, Judge:

Appellant was originally charged in 20 specifications under two separate charges with multiple acts of criminality associated with his official duties as a postal clerk serving aboard the USS VANCOUVER (LPD–2). The majority of these offenses need not directly concern this Court since they were disposed of at the trial level with results favorable to appellant. We are, however, faced with the proper disposition of the five offenses of which appellant was found guilty, his pleas to the contrary notwithstanding. He was sentenced by the military judge for these offenses to confinement at hard labor for two months, forfeiture of $175.00 pay per month for six months, and a bad-conduct discharge.

Appellate defense counsel, in his initial brief submitted to this Court, assigned various errors to which appellate government counsel responded. Subsequent to submission of these briefs, this tribunal saw fit to require the parties to view the case anew and to submit additional briefs on an issue which evidently escaped the scrutiny of the drafter of the charges, the trial and defense

counsel, the trial judge, and the staff judge advocate. It is this issue which is dispositive of appellant's case here.

The government's theory of appellant's larcenous conduct [1] was that while acting in his official capacity as a postal clerk aboard a commissioned U. S. Navy vessel appellant came into possession of five parcels, each bearing the distinctive postal notation "COD" [2] as well as the required U. S. Postal Service accountability tags for such parcels which were attached thereto in the prescribed manner.[3] Succinctly stated, the government then attempted, with obvious success, to prove that appellant delivered the parcels to their respective shipboard addresses,[4] removed the accountability tags, received the amounts shown as due on these tags from each of the five addresses, and unlawfully pocketed these funds rather

---

1. Appellant was charged, *inter alia*, with ten offenses grounded in five alleged criminal acts, to wit:

   Charge II: Violation of the Uniform Code of Military Justice, Article 121, 10 U.S.C. § 921.

   Specification 1: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $36.29, the property of the United States.

   Specification 2: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $26.69, the property of the United States.

   Specification 3: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $34.05, the property of the United States.

   Specification 4: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $26.05, the property of the United States.

   Specification 5: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $51.45, the property of the United States.

   Specification 6: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $36.29, the property of SA David Bornemann, USN, USS Vancouver (LPD–2), on active duty.

   Specification 7: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $26.69, the property of SA Arthur Buttrill, USN, USS Vancouver (LPD–2), on active duty.

   Specification 8: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $34.05, the property of BT3 Paul Beaulieu, USN, USS Vancouver (LPD–2), on active duty.

   Specification 9: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $26.05, the property of BM3 Pat Montour, USN, USS Vancouver (LPD–2), on active duty.

   Specification 10: In that Postal Clerk Seaman Recruit John H. Leslie, U. S. Navy, USS Vancouver (LPD–2), on active duty, did, on board USS Vancouver (LPD–2), on or about July 1977, steal $51.45, the property of LTJG Chris Adams, USN, USS Vancouver (LPD–2), on active duty.

   Of these, appellant was found guilty of Specifications 1 through 5 and not guilty of Specifications 6 through 10.

2. Delivery of such collect-on-delivery mail to shipboard military personnel is affirmatively precluded by regulation. *See* Paragraph 7304.3 *a* of OPNAVINST 5112.1A of 1 December 1976. However, once appellant inadvertently came into possession of these parcels his subsequent activity concerning their delivery was governed by Chapter I, part 163 of the Postal Service Manual. *Id.* at *b.*

3. These documents are intended, in part, to facilitate postal money order payment by the addressee to the sender for the goods shipped plus ancillary charges, including the fee for this service. *See* part 163.1, Postal Service Manual. Under the facts here presented, appellant was required to deliver the parcels to the respective addressees, collect the appropriate charges, and ensure that the appropriate disposition of the COD documents and that a postal money order was completed and remitted to each sender no later than the first business day subsequent to parcel delivery. *See* parts 163.51, 163.52, and 163.62, Postal Service Manual.

4. Of the five parcels involved, four were sent by the same vendor, destined for individual enlisted members of the ship's company, and the remaining parcel was addressed to one of the ship's junior officers.

than remitting them to the vendors to whom said funds were lawfully payable.[5]

■ The military judge erred as a matter of law when he found appellant guilty of the offenses set forth under Specifications 1 through 5 of Charge II. The funds paid to appellant by each of the respective addressees were for the *purchase* of money orders and not as a consequence of the *sale* of money orders. Owing to this subtle but eminent distinction, each of the separate amounts of money at issue never became the property of the United States because title to the respective monetary funds never passed to the United States. *See Smyer v. United States*, 273 U.S. 333, 335, 47 S.Ct. 375, 376, 71 L.Ed. 667 (1927); *United States v. Bloys*, 19 F.2d 364 (1927). Rather, these funds remained, at all times, private funds, not money order funds, and the memoranda in the form of accountability tags which were removed from each parcel by appellant remained mere applications for the expectant money orders. *See United States v. Bloys, supra* at 365. Neither did the United States ever have or acquire a superior right to possession of the money in question. As between appellant and the United States they stood, each to the other, in the relation of agent and principal, respectively. With regard to the disposition of the parcels here involved, appellant's duty as an agent required him to dispose of the parcels and to collect and distribute the funds which the addressees paid over to him as a consequence of such delivery in accordance with those regulations which the government duly promulgated. *See* footnotes 2 and 3, *supra*. That is what this particular agency relationship entailed and contemplated. It did not contemplate appellant's wrongful acts which, as a series of larcenies by trick,

*see* paragraph 200a (4), *Manual for Courts-Martial, 1969 (Rev.)* (MCM), constituted a species of fraud. *See* BLACK'S LAW DICTIONARY 594 (5th ed. 1979). It was that kind of fraud from which he alone profited and from which the United States derived no benefit. *See Oddo v. Interstate Bakeries, Inc.*, 271 F.2d 417, 422 (8th Cir. 1959). In that appellant, although ostensibly acting in the business of his principal, was really committing fraud for his own benefit, he thereby acted outside the scope of his agency. *See Farm Bureau Co-op. Mill and Supply, Inc. v. Blue Star Foods, Inc.*, 238 F.2d 326, 335 (8th Cir. 1956), and cases therein cited. As to such transactions, the funds wrongfully obtained by the agent can not be recovered from the agent's principal. *See United States v. Oddo, supra*, and cases cited therein. In that such recovery is precluded, it can not be said that the principal has a superior right to possession of the converted funds. Thus, in this case, any argument that the United States had a superior right to possession of the funds given by the respective vendees, upon delivery of the individual parcels to appellant, is unpersuasive. As neither party seriously contends nor suggests that the United States ever had actual possession of the respective sums at issue here, the United States could never be either a general or special owner of these funds. *See* paragraph 200a (3), MCM. That being so, the ownership element of the offense of larceny, concerning the five specifications under the Charge of which appellant was found guilty, is defective respecting each specification as a matter of law. *See id.* Obviously then, there is a patent variance between the pleadings, findings, and proof in this case.[6] What remains to be seen is

---

5. The amounts set forth in Specifications 1 through 4 and 6 through 9 of Charge II correspond with the value of merchandise sent to the respective addressees by Knapp Shoe Company, Brockton, Massachusetts; Specifications 5 and 10 reflect the value of a ring mailed to the addressee officer by Josten's Company, Santa Barbara, California. *See* footnote 1, *supra*.

6. Ascertaining correct ownership of the subject funds need not detain us. Suffice it to say that appellant was proven to have unlawfully helped himself to someone's money, be it that of the two vendors or that of the various vendees. As respects any of them, they had a superior right to possession of the individual sums of money as against all third parties, including appellant. *Cf. United States v. Buckhorn*, 15 U.S.C.M.A. 556, 557, 36 C.M.R. 54, 55 (1965); *United States v. Real*, 8 U.S.C.M.A.

whether or not that variance is fatal, for if it is, then appellant's conviction must be reversed.

■■■ The question of the effect of a variance upon an otherwise unassailable conviction is not a new one. In *United States v. Lee*, 1 M.J. 15 (C.M.A.1975), it was posited that the underlying critical inquiry involves possible prejudice to the appellant. Prejudice, in turn, is properly measured against a dual standard: (1) has the accused been misled to the extent that he has been unable adequately to prepare for trial, and (2) is the accused *qua* appellant fully protected against another prosecution for the same offense. *United States v. Lee, supra* at 16, *citing United States v. Craig*, 8 U.S.C. M.A. 218, 24 C.M.R. 28 (1957), and *United States v. Hopf*, 1 U.S.C.M.A. 584, 5 C.M.R. 12 (1952). The first prong of the above test is satisfied by appellant's arraignment on Specifications 6 through 10 of Charge II and Specifications 1 through 10 of Charge I,[7] which, when read together, set out the entire scheme alleged as the core of appellant's criminality,[8] and by the service of both charges and the 20 underlying specifications upon him four days prior to trial.[9] Any assertion on behalf of appellant that he had been misled concerning the misdeeds for which he was being brought to trial would necessarily evaporate in light of the factual language of the charge sheet which was apparently complete save for definitive allegations of vendor ownership of the subject funds; these are impliedly present when the pleadings are viewed as a whole. The second prong of the test is satisfied because the evidence of record, juxtaposed to the findings, preserves unto appellant a shield against another charge, sounding in larceny of putative money order funds in the manner, at the place, and during the period involved. *See United States v. Lee, supra* at 17; Article 44(a), UCMJ, 10 U.S.C. § 844(a); pars. 68*d* and 215*b*, MCM. Thus, if the analysis terminated here, the result would be the affirmance of the findings of guilty [10] and the sentence in appellant's case. However, for the reasons set forth below, a contrary result is required.

Variance, as a legal concept, was given extensive judicial attention in *Berger v. United States*.[11] There, the appellant was indicted and later charged with a single conspiracy to utter counterfeit notes purporting to be issued by certain federal reserve banks. The evidence adduced at trial by the prosecution tended to establish two conspiracies: one between Berger and one Katz, and another among Katz, Rice, and Jones. In essence, Berger claimed on appeal that his trial was infected with reversible error because the government, in establishing its case against him by introducing evidence of the second conspiracy involving Rice and Jones, as well as Berger's alleged coconspirator, Katz, created a fatal variance as a matter of law. In disposing of this contention the Supreme Court relied upon the following rationale in formulating its now fundamental two-pronged test, as relied upon in *United States v. Lee, supra* :

644, 25 C.M.R. 148 (1958). Thus, as to either ownership class, appellant could have been correctly convicted of larceny, *had he been so charged. See* par. 200*a* (3), MCM.

7. Specifications 1 through 5 of Charge I allege dereliction of duty, Article 92(3), UCMJ, 10 U.S.C. § 892(3), in willfully failing to issue money orders to the respective vendors; Specifications 6 through 10 of Charge I allege violation of a general regulation, Article 92(1), UCMJ, 10 U.S.C. § 892(1), in accepting currency for money orders to be issued at a later time and failing to complete the postal financial transaction in the presence of the mailer. *See* par. 2202(3) OPNAVINST 5112.1A of 1 December 1976.

8. Concededly, the prosecution, in an effort to provide for all contingencies, should have also alleged, in five more specifications under Charge II, that the money was the property of the respective vendors.

9. Appellant has never alleged, either here or in the forum below, that he had insufficient time in which to prepare his defense.

10. The court-martial order erroneously reflects the actual findings of guilty in this case. Ordinarily, a supplementary court-martial order would be prepared to correct this discrepancy; however, that action is obviated by the action which we take today.

11. 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

It is settled by the great weight of authority that, although an indictment charges a conspiracy involving several persons and the proof establishes the conspiracy against some of them only, the variance is not material. But several circuit courts of appeals have held that if the indictment charges a single conspiracy, and the effect of the proof is to split the conspiracy into two, the variance is fatal. Thus it is said in *Telman v. United States* (C.C.A.) 67 F.2d 716, 718; 'Where one large conspiracy is charged, proof of different and disconnected smaller ones will not sustain a conviction.' In support of the statement the various decisions upon which petitioner here relies are cited. This view, however, ignores the question of materiality; and should be so qualified as to make the result of the variance depend upon whether it has substantially injured the defendant.

In the present case, the objection is not that the allegations of the indictment do not describe the conspiracy of which petitioner was convicted, but, in effect, it is that the proof includes more. If the proof had been confined to that conspiracy, the variance, as we have seen would not have been fatal. Does it become so because, in addition to proof of the conspiracy with which petitioner was connected, proof of a conspiracy with which he was not connected was also furnished and made the basis of a verdict against others?

Section 269 of the Judicial Code, as amended (28 U.S.C. § 391 [28 U.S.C.A. § 391]) provides:

'On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the Court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.'

The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charge against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. *Bennett v. United States*, 227 U.S. 333, 338, 33 S.Ct. 288, 57 L.Ed. 531; *Harrison v. United States* (C.C.A.) 200 F. 662, 673; *United States v. Wills* (C.C.A.) 36 F.2d 855, 856, 857. Cf. *Hagner v. United States*, 285 U.S. 427, 431–433, 52 S.Ct. 417, 419–420, 76 L.Ed. 861.

Evidently Congress intended by the amendment to section 269 to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, upon an examination of the entire record substantial prejudice does not appear, the error must be regarded as harmless. See *Haywood v. United States* (C.C.A.) 268 F. 795, 798; *Rich v. United States* (C.C.A.) 271 F. 566, 569, 570.

. . . . . . .

. . . The proof here in respect of the conspiracy with which Berger was not connected may, as to him, be regarded as incompetent; but we are unable to find anything in the facts—which are fairly stated by the court below—or in the record from which it reasonably can be said that the proof operated to prejudice his case, or that it came as a surprise; and certainly the fact that the proof disclosed two conspiracies instead of one, each within the words of the indictment, cannot prejudice his defense of former acquittal of the one or former conviction of the other, if he should again be prosecuted.

In *Washington & Georgetown R'd v. Hickey*, 166 U.S. 521, 531, 17 S.Ct. 661, 665, 41 L.Ed. 1101, this court said that 'no variance ought ever to be regarded as material where the allegation and proof

substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial.' This was said in a civil case, it is true, but it applies equally to a criminal case if there be added the further requisite that the variance be not such as to deprive the accused of his right to be protected against another prosecution for the same offense. See *Meyers v. United States* (C.C.A.) 3 F.2d 379, 380; *Mansolilli v. United States* (C.C.A.) 2 F.2d 42, 43.[12]

This dual test, as reinforced by the Supreme Court's previous holding in *Bennett v. United States*,[13] formed the basis for the decision in an early military case on the same subject. In *United States v. Hopf, supra*, the appellant was charged with assault with intent to do bodily harm with a dangerous weapon to a named Korean male. At trial, since the victim did not testify and the prosecution's witnesses did not know his name, the members of the general court-martial, by exceptions and substitutions, found appellant guilty of the core offense as alleged, but as perpetrated against "an unknown" Korean male. The issue, as framed by our military judicial superiors, was whether the *findings* were fatally variant from the *specification*. In resolving the issue against appellant, the Court pointed out that, since the name of the victim was of little consequence to the preparation of appellant's defense, appellant suffered no prejudice and since "the nature or identity" of the offense was not changed by the findings, the variance was not fatal. Here, as ·in *United States v. Berger*, the prosecution had, in fact, proved all of the requisite elements of the alleged offense.

The same issue, that is, whether there was a fatal variance between the *findings* ·and the *specification*, confronted our military High Court in *United States v. Lee, supra*. There, appellant was charged with possession of marijuana in the hashish form, as being violative of a service general regulation and thus in contravention of Article 92, UCMJ, 10 U.S.C. § 892. He was found guilty by the military judge, by exceptions and substitutions, of possession of "three growing marijuana plants." Again, the issue was resolved against the appellant, the Court reasoning that the words in the specification, "in the hashish form," were mere surplusage and that the facts of record supported the conclusion that appellant, as respects the core offense, had in no way been prejudiced. As in *United States v. Berger* and *United States v. Hopf*, both *supra*, the government's proof blanketed all of the essential statutory elements embraced by the charged offense.

■ Obvious from the above line of cases is that variance, as a creature of judicial formulation, involves a consideration of *three* separate and distinct jurisprudential items: the criminal allegation (pleadings), the proof, and the findings. If, as to the core offense, all three coincide, as in *United States v. Berger, United States v. Hopf*, and *United States v. Lee*, all *supra*, any. plea by an aggrieved accused that his conviction is infirm by reason of variance will fall on deaf ears at the appellate level. Only one case apparently breaks ranks with this rationale.

In *United States v. Craig*,[14] the appellant was charged, with larceny of funds belonging to various enlisted personnel, such funds being ostensibly intended for deposit in the respective soldiers' base savings accounts. While a regulation then in effect required appellant to turn over these funds to the disbursing officer and to credit the respective sums to the individual depositors, it was proved at trial that he never carried out his duties in either regard. The larceny specifications against which the appellant defended at trial alleged the individual soldier-depositors as the owners of the funds. At the conclusion of the government's case-in-chief, trial defense counsel made a motion for a finding of not guilty, basing his legal claim on the contention that, inas-

12. *Id.* 295 U.S. at 81–3, 55 S.Ct. at 630–31.

13. 227 U.S. 333, 33 S.Ct. 288, 57 L.Ed.2d 531 (1913).

14. 8 U.S.C.M.A. 218, 24 C.M.R. 28 (1957).

much as the evidence showed the funds to have been the property of the United States, there resulted a fatal variance between the *pleadings* and the *proof*. The law officer (military judge in present practice) denied the motion and the appellant was subsequently found guilty as charged. Intermediate appellate review by the Army Board of Review (Court of Military Review in present practice) affirmed the appellant's conviction despite the threshold conclusion reached there that the subject funds were the property of the United States and should have been so alleged. This variance was held by that tribunal to be non-fatal, that result predicated upon application of the dual test announced in *United States v. Berger, supra*. The United States Court of Military Appeals thereafter granted review to decide whether the law officer erred in denying the defense motion for a finding of not guilty "because of a variance between the *pleadings* and the *proof of ownership*." [15] After lengthy citation to both *United States v. Berger* and *United States v. Hopf, supra*, the Court added its own embellishments:

> In Federal criminal procedure variance as to ownership in larceny cases no longer has the importance which it once had at common law. 'It now spoils a trial only when the substantial rights of the accused are impaired; and his rights to a correct accusation are generally said to be to have sufficient information as to the charge against him, and protection against being again placed in jeopardy.' *England v. United States*, 174 F.2d 466, 468 (CA 5th Cir.) (1946). Only when it is shown that 'substantial prejudice to the accused resulted therefrom' will a variance be deemed prejudicial. *Loper v. United States*, 160 F.2d 293 (CA 10th Cir.) (1947). Judge Learned Hand, in *United States v. Cohen*, 145 F.2d 82 (CA 2d Cir.) (1944) (cert. den. 1945), states the rule to

be that a variance between an indictment and the proof is material only when it is shown that 'practical prejudice resulted to the accused from such a variance.' See also *Panella v. United States*, 140 F.2d 71 (CA 4th Cir.) (1944); *Cromer v. United States*, 142 F.2d 697 (CA D.C. Cir.) (1944) (cert. den. 1944); and *Ferrari v. United States*, 169 F.2d 353 (CA 9th Cir.) (1948).[16]

Thereafter, confident in both its legal analysis and its finding that Craig had not been prejudiced, that Court affirmed his conviction.

■ At first blush it might well appear that the entire subject of variance and its proper role in appellate resolution of disputes centering on alleged fissures in the pleadings-proof-findings triangle has been set firmly to rest by Article 59(a), UCMJ, 10 U.S.C. § 859(a). That Article provides, *inter alia*:

> § 859. Article 59. Error of law; lesser included offense (a) A finding or sentence of a court-martial may not be held to be incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused. . .

Certainly, scrutiny illuminates a distinctive kinship between this sub-Article and the amended Section 269 of the Judicial Code discussed by the Supreme Court in *United States v. Berger, supra*. Unfortunately, research has failed to provide the tools necessary to forge a direct historical, judicial, or legislative link between the two. What research has disclosed, however, is that the present Article 59(a), unaltered since its inception,[17] had its genesis in Article of War 37 which itself provided that:

> Irregularities; effect of. The proceedings of a court-martial shall not be held invalid, nor the findings or sentence disapproved, in any case on the ground of improper admission or rejection of evidence or for any error as to any matter of

---

**15.** *Id.* at 219, 24 C.M.R. at 29 (emphasis added). This precise issue of material variance was considered during House hearings on the Code, *see United States v. Ivory*, 9 U.S.C.M.A. 516, 521, 26 C.M.R. 296, 301 (1958), but apparently this bit of legislative history escaped notice by the *Craig* Court.

**16.** *Id.* at 220–1, 24 C.M.R. at 30–1.

**17.** *Compare* Act of May 5, 1950, Pub.L. No. 506, Ch. 169, § 1, 64 Stat. 108, Title 50 U.S.C. ch. 22, §§ 551–736 *with* Act of August 10, 1956, Pub.L. No. 1028, Ch. 1041 § 1, 70A Stat. 1, Titles 10 and 32 U.S.C.

pleading or procedure unless in the opinion of the reviewing or confirming authority, after an examination of the entire proceedings, it shall appear that the error complained of has injuriously affected the substantial rights of an accused: *Provided,* That the act or omission upon which the accused has been tried constitutes an offense denounced and made punishable by one or more of these articles: *Provided further,* That the omission of the words "hard labor" in any sentence of a court-martial adjudging imprisonment or confinement shall not be construed as depriving the authorities executing such sentence of imprisonment or confinement of the power to require hard labor as a part of the punishment in any case where it is authorized by the Executive order prescribing maximum punishments. Sec. 1, Ch. II, act of June 4, 1920 (41 Stat. 794); 10 U.S.C. § 1508.

Thus, this Article forms the predicate for *any* present reviewing authority to sustain a finding of guilty, even though error has been committed, when it can be determined that the error does not materially prejudice the substantial rights of the accused.[18] However, the wording of this former Article and the drafter's reference with respect to technical errors [19] make it clear that the present Article 59(a) was envisioned to provide a shield against reversal of criminal convictions where the error complained of is less than *substantive.*[20] In this regard, it serves much the same purpose as the amended Section 269 of the Judicial Code interpreted in *United States v. Berger, supra.* The ancestor of the present Article 59(a) was formulated with regard to having

substantively correct court-martial findings and sentences upheld on subsequent review despite minor errors or technical irregularities which otherwise might be thought sufficient to invalidate the proceedings. Those charged with the review function under the Articles of War had wide discretion respecting the action which they took on the proceedings and sentence; [21] however, even this discretion did not embrace affirming a court-martial proceeding where the record disclosed a variance with a *statutory* requirement thus constituting a fatal defect.[22] There is no evidence to indicate that present reviewing entities are not similarly constrained.

It should be noted well that in *United States v. Berger, United States v. Hopf,* and *United States v. Lee,* all *supra,* the government's proof established beyond a reasonable doubt the existence of each and every element of the respective offenses alleged. In each case, the allegation substantively matched the proof of each offense element which, in turn, was in consonance with the findings. *United States v. Craig, supra,* stands alone as an aberration for there the ownership element of the offense of larceny [23] *vis-a-vis* the allegation, upon which the accused was arraigned, and the findings differed as a matter of law under the facts proven by the prosecution at trial. The *Craig* Court was quick to fasten upon the surface applicability of the law of variance in the criminal context as the touchstone for its decision and it was here, it is believed, that that case was wrongly decided. Then, as now, the applicable statute required that ownership of the

---

18. Index and Legislative History, Uniform Code of Military Justice, p. 2250 (1949).

19. *Id.* Section 472, Naval Courts and Boards (1937), provides in pertinent part:
   (e) If there has been no miscarriage of justice, the finding of the court should not be set aside or new trial granted because of technical errors or defects which do not affect the substantial rights of the accused.
   Reviewing authorities in acting upon a record should bear in mind the maxim "The law does not regard small matters," and should not disapprove on account of deviations in

immaterial ways not tending to prejudice the rights of any individual.

20. *See* Hearing Before Committee on Armed Services, H.R.2498, 81st Congress, 1st Session (1949) (Friday, April 1, 1949). *See also United States v. Smith,* 8 M.J. 646 (N.C.M.R.1979).

21. *See* WINTHROP, MILITARY LAW AND PRECEDENTS 449 (2d ed. 1920).

22. *See Id.* at 453.

23. *See* Article 121, UCMJ, 10 U.S.C. § 921; par. 200a(3), MCM, 1969 (Rev.).

funds deposited with appellant be specifically proven as an element of the offenses alleged. The Court was at liberty neither to overlook this statutory requirement nor to ignore another which directly affects the decisions of this tribunal.

Article 66(c), UCMJ,[24] provides in pertinent part that:

In a case referred to it, the Court of Military Review may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.

. . .

What is left unclear in *United States v. Craig, supra,* is not by what authority that Court took its action in the case,[25] but rather by what authority that Court allowed the findings of guilty, as affirmed by the Army Board of Review, which were firmly established as erroneous as a matter of law, to remain viable in the face of Article 66(c). That Article is clear and unambiguous and this Court has been confronted by no authority which even pretends to determine that the Article means anything other than what it plainly states. In the case at bar appellant was charged with and found guilty of five larcenies of property belonging to the United States; the proof established other ownership of the respective sums of money as a matter of law. Proof of an essential statutory element was thus lacking and this Court should not indulge in the pretense that it was not. As there were findings which were not correct in law, Article 66(c) mandates that these findings be invalidated.

The remaining assignments of error either lack merit or are mooted by the action which we take today.

24. 10 U.S.C. § 866(c). This present provision remains essentially identical to the corresponding provision enacted in 1950.

25. *See* Article 67(d), UCMJ; 10 U.S.C. § 867(d).

26. Appellant may still be prosecuted for larceny of the vendor's funds. *See* footnote 6, *supra*; Article 43(b), UCMJ, 10 U.S.C. § 843(b);

Accordingly, the findings of guilty and sentence are set aside and Specifications 1 through 5 of Charge II are dismissed.[26]

BAUM, Senior Judge (concurring in the result):

I concur that the findings of guilty and sentence must be set aside and the Charge with its specifications dismissed. I reach this conclusion for different reasons, however. While I agree that the United States Supreme Court's holding in *Smyer v. United States,* 273 U.S. 333, 47 S.Ct. 375, 71 L.Ed.2d 667 (1927), prevents us from finding that the United States government had title to the funds in question, I am persuaded by counsel's argument that the United States had a superior right to possession of the money and that such is all that is required in a larceny prosecution. The allegation "property of the United States" encompasses this superior right to possession and I therefore do not reach the issue on which Judge Michel relies. I find reversal mandated for failure of the evidence. While prosecution exhibit 1 was admissible under the business entry exception to the hearsay rule to prove that a claim had been filed with the Post Office, it was not admissible for purposes of proving the truth of the assertion made therein by "Josten's" that "No COD Rem't". *United States v. Burge,* 1 M.J. 408 (C.M.A.1976); *United States v. Evanoff,* No. 78 0820 (N.C.M.R. 28 November 1978); *United States v. Burge,* 50 C.M.R. 200 (N.C.M.R.1974). There was, thus, a failure of proof with regard to specification 5 of Charge II. As to specifications 1 through 4 of Charge II, there was also no admissible evidence that the senders of the COD packages had not received payment. I agree with appellate defense coun-

pars. 68c and 215d, MCM. As the military judge found appellant not guilty of Specifications 6 through 10 of Charge II and Specifications 1 through 10 of Charge I, no rehearing may be had respecting these allegations. *See* Article 44, UCMJ, 10 U.S.C. § 844; par. 92a, MCM; *United States v. Hitchcock,* 6 M.J. 188 (C.M.A.1979).

sel's assertion that "[t]he admissible evidence of record does not support a finding of guilty respecting specifications 1, 2, 3, 4 and 5 of Charge II" and I would reverse for this reason.

PRICE, Judge (dissenting):

I dissent because I am of the opinion that no variance between the pleadings and the proof as to ownership of the monies existed in this case. Appellant received the monies from recipients of the packages and, as in *United States v. Smyer*, 273 U.S. 333, 47 S.Ct. 375, 71 L.Ed.2d 667 (1927), title is not an element here. The United States, in my opinion, had a right to possession of the monies, superior to the right of possession of the appellant. See paragraph 200*a*(3), *Manual for Courts-Martial, 1969 (Rev.).*

As regards the proof submitted in support of the conviction, I deem it adequate. Accordingly, I would affirm the findings and sentence as approved on review below.